PARTIDO POPULAR DEMOCRÁTICO, demandante y recurrido, *v.* RICARDO PLANADEBALL POGGY, demandado y peticionario.

*Número:* CE-88-315          *Resuelto:* 10 de junio de 1988

*Luis Benjamín Méndez Méndez* y *Héctor Quijano Borges*, de *Méndez Méndez & Quijano Borges*, abogados del peticionario; el recurrido no compareció.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Ricardo Planadeball Poggy fue destituido el 28 de abril de 1975, por voto unánime de la Comisión Estatal para Ventilar Querellas Municipales, del cargo de Alcalde de Patillas "por razón de la conducta inmoral y actuaciones ilegales en el desempeño de sus funciones como Alcalde de Patillas, al actuar en la forma y manera que se le imputan en los Cargos Primero, Segundo, Tercero, Cuarto, Quinto, Sexto y Séptimo que esta Comisión considera y declara que han sido probados". *Exhibit* V, pág. 45.(1)

El señor Planadeball Poggy inició y completó los trámites para figurar en la papeleta de primarias como aspirante al cargo público de Alcalde de Patillas. A esos efectos, el 21 de abril de 1988 la Comisión Estatal de Elecciones lo certificó como aspirante oficial con derecho a figurar en la papeleta de primarias de su partido.

El 9 de mayo de 1988 el Partido Popular Democrático presentó en el Tribunal Superior, Sala de Guayama, una querella de descalificación de candidatura. En apoyo de su contención, el querellante recurrido expuso que:

De conformidad con lo dispuesto en la Ley Orgánica de los Municipios, los aspirantes a la posición de alcalde por cualquiera de los municipios del Estado Libre Asociado de Puerto Rico no pueden haber sido destituidos de cargo o empleo alguno por conducta impropia en el desempeño de sus funciones. 21 L.P.R.A. Sec. 3001(a)(6).

---

(1) Los referidos cargos tienen en común que imputan hechos constitutivos de fraude al Municipio de Patillas.

## II

El aquí querellado, sin embargo, fue destituido del cargo de alcalde de Patillas mediante resolución dictada por la Honorable Comisión Estatal para Ventilar Querellas Municipales del Estado Libre Asociado de Puerto Rico el día 28 de abril de 1975, "por razón de la conducta inmoral y actuaciones ilegales en el desempeño de sus funciones como Alcalde de Patillas". Se acompaña fotocopia de [dicha] resolución. *Exhibit* VI, pág. 1.

A base de ello solicitó que se descalificara al querellado peticionario como candidato a Alcalde del Municipio de Patillas en las primarias a celebrarse el 12 de junio de 1988. El tribunal declaró con lugar la querella y procedió a descalificar al querellado peticionario como candidato a Alcalde del Municipio de Patillas.

Por entender que la sentencia llega a un resultado jurídica y constitucionalmente correcto, expedimos y confirmamos la sentencia.

## I

El Art. 3.01 de la Ley Orgánica de los Municipios de Puerto Rico vigente establece en su inciso (a)(6) que:

(a) Todo aspirante a Alcalde deberá, a la fecha de la elección, cumplir con las siguientes condiciones:

. . . . . . . . .

(6) No haber sido destituido de cargo o empleo por conducta impropia en el desempeño de sus funciones. 21 L.P.R.A. sec. 3001(a)(6).

Bajo la anterior Ley Municipal, los alcaldes tenían que reunir las mismas condiciones de elegibilidad requeridas para los miembros de la Asamblea Municipal. Art. 34 de la Ley Municipal, 21 L.P.R.A. ant. sec. 1253. La ley establecía que no eran elegibles para ser asambleístas, y por extensión para alcalde, aquellos que habían sido destituidos de algún cargo o empleo mediante convicción firme por delincuencia o conducta inmoral.

Causas similares existían bajo el Art. 18 de la Ley Municipal Núm. 53 de 28 de abril de 1928. Bajo dicha ley resolvimos en *Pueblo In Re Rodríguez v. Blanco*, 50 D.P.R. 591, 594–595 (1936) que:

La Sección 18 de la Ley Municipal, según quedó enmendada por la sección 4 de una Ley (núm. 98) aprobada el 15 de mayo de 1931 (Leyes de ese año, pág. 601) dispone: "para ser elegible como miembro de la asamblea municipal se necesitará . . . . . no haber sufrido condena alguna por delito grave o cualquier otro delito que implique depravación moral, ni haber sido destituído de cargo público por delincuencia o conducta inmoral." Nada había en el presente caso que sugiriera que el querellado había sido aún convicto de ningún delito grave o de cualquier otro delito que envolviera depravación moral o de que jamás hubiera cumplido una sentencia "por delito grave o cualquier otro delito que implique depravación moral." Había sido destituído de un cargo público por delincuencia y conducta inmoral. Véase *Blanco* v. *Asamblea Municipal de Santa Isabel* y *Pueblo* v. *Blanco*, supra. Por tanto, el hecho de que él nunca hubiera sido convicto por ningún tribunal competente de ningún delito grave ni de ningún otro delito que implicara depravación moral, nada tiene que ver con el caso, a menos que haya algún mérito en la contención del apelante de que la ley que confiere a la asamblea municipal la facultad para destituir es inconstitucional y de que la investigación de los cargos imputados al querellado como Secretario Auditor Municipal no constituye debido proceso de ley sino una usurpación o invasión de las facultades pertenecientes al poder judicial. El alegato del apelante deja de convencernos de que la facultad concedida por la legislatura sea inconstitucional.

No vemos razón para alterar el anterior enfoque en casos surgidos después de aprobarse nuestra Constitución.

■ En primer lugar, el legislador ha reiterado que es política pública el que una persona que ha sido destituida como alcalde por conducta inmoral o ilegal no está cualificado para regresar a desempeñar el cargo. El legislador no

impuso límite de tiempo alguno para ello. Tampoco limitó la incapacidad a hechos acaecidos durante algún cuatrienio específico. Por analogía, entendemos aplicable la doctrina vigente que adoptamos en *Rodríguez Rivera, Alcalde v. Comisión*, 84 D.P.R. 68 (1961). Allí resolvimos, a las págs. 77–78, que para garantizar la pureza de las actuaciones de los alcaldes resulta válido que éste pueda ser destituido por actuaciones ilegales en un cuatrienio anterior.

■ Al aprobar las leyes municipales en 1980, el legislador era consciente de las anteriores doctrinas. Decidió con conocimiento de causa que la causa inhabilitadora objeto de la situación ante nos era absoluta. No tenemos fundamento para alterar la política pública vigente. Como apunta un reconocido comentarista, L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, Sec. 13-19, pág. 1098.

> The states demand a variety of qualifications from potential political candidates. Since these state-enacted eligibility requirements bar certain persons from holding political office, they must satisfy the requisites of the equal protection clause. The threshold question is whether, as a rule, these eligibility requirements are evaluated by the lower tier equal protection test or whether they demand more exacting judicial scrutiny. Because candidate eligibility requirements do not, as a class, infringe upon constitutionally fundamental rights or draw suspect classifications, they are generally assessed only under the lower tier test discussed in Sec. 16-2, and are sustained so long as they rationally relate to a legitimate state interest. (Escolio omitido.)

Entendemos y opinamos que hay un fundamento racional para la limitación legislativa, especialmente si consideramos que el derecho a ser candidato a un puesto público no es absoluto. *García v. Luciano*, 115 D.P.R. 628 (1984).

## II

Asumiendo que la prohibición absolutista, en términos de tiempo, tenga algún defecto constitucional, ello no favorece al peticionario. La gravedad de los cargos probados que dieron lugar a su destitución es tal, en ausencia de prueba alguna sobre una posible rehabilitación, que si tuviéramos discreción para obviar la prohibición la ejerceríamos en su contra.(2)

Al así opinar, nos remitimos a la reciente expresión unánime de este Tribunal en *Gobernador de P.R. v. Alcalde de Juncos*, 121 D.P.R. 522, 531–532 (1988).

La importancia de las funciones del alcalde en la estructura y funcionamiento de una célula social, tan vital como lo es un municipio, es obvia. Un alcalde es el jefe del poder ejecutivo local, jefe administrativo de los distintos departamentos y servicios municipales, colaborador de la Asamblea Municipal en el desenvolvimiento de la función legislativa y representante legal del municipio en actos públicos y procedimientos judiciales, entre otros. Ley Núm. 146 [de 18 de junio de 1980, según enmendada, 21 L.P.R.A. sec. 2001 y ss.]; E. Córdova, *Curso de Gobierno Municipal*, Río Piedras, Ed. Universidad, 1964.

En síntesis, el alcalde es la figura central en la administración pública y la sociología política de la comunidad municipal.

Por los motivos anteriormente expuestos, *se confirmará la sentencia recurrida.*

El Juez Presidente Señor Pons Núñez emitió voto de conformidad. El Juez Asociado Señor Negrón García emitió opinión disidente. El Juez Asociado Señor Rebollo López y la

---

(2) La situación legal y fáctica ante nos es claramente distinta a la presente en *Hernández Cruz v. Sria. de Instrucción*, 117 D.P.R. 606 (1986), donde resolvimos que no procede la destitución automática de un empleado público por motivo de una convicción por delito grave.

Juez Asociada Señora Naveira de Rodón disienten sin opinión escrita.

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

Hace trece (13) años, el 28 de abril de 1975, la Comisión Estatal para Ventilar Querellas Municipales destituyó al Alcalde de Patillas Ricardo Planadeball Poggy de su cargo "por razón de la conducta inmoral y actuaciones ilegales en el desempeño de sus funciones . . .".

Transcurrió el tiempo. El 21 de abril de 1988 —previo cumplimiento de los requisitos necesarios, incluso el endoso afirmativo del Comisionado Electoral del Partido Popular Democrático (P.P.D.)— el Presidente de la Comisión Estatal de Elecciones lo certificó como candidato a alcalde de dicho municipio por el P.P.D., con derecho a participar en el proceso primarista del próximo domingo 12 de junio. El dictamen de la Comisión Estatal de Elecciones fue notificado al P.P.D. por correo el 21 de abril.

Inconforme, el 9 de mayo el P.P.D. presentó ante el Tribunal Superior, Sala de Guayama, una acción para descalificarlo por el fundamento de que su destitución anterior impedía su candidatura. Invocó el Art. 3.01 de la vigente Ley Orgánica de los Municipios de Puerto Rico que en lo pertinente dispone:

(a) Todo aspirante a Alcalde deberá, *a la fecha de la elección*, cumplir con las siguientes condiciones:

.      .      .      .      .      .      .      .

(6) No haber sido destituido de cargo o empleo por conducta impropia en el desempeño de sus funciones. (Énfasis suplido.) 21 L.P.R.A. sec. 3001(a)(6).

El ilustrado tribunal de instancia acogió el pedido y lo descalificó. En su dictamen dicho foro distinguió el caso de *García v. Luciano*, 115 D.P.R. 628 (1984), a base de que los

hechos que motivaron su destitución eran más graves y el precepto municipal era mandatorio.

A solicitud de Planadeball Poggy expediríamos el auto y revocaríamos ese dictamen.

## I

En esencia, Planadeball Poggy se queja de que el decreto de instancia es contrario a sus derechos constitucionales. Aduce que aplicar la Ley Orgánica de los Municipios de Puerto Rico a su caso es contrario a lo resuelto en *García v. Luciano*, supra. Argumenta una violación al principio fundamental de la igual protección de las leyes, pues su descalificación es irrazonable y constituye un castigo cruel e inusitado. Finalmente sostiene que ello coarta su derecho fundamental "a elegir y ser elegido" y que la interpretación brindada le priva permanentemente de ser candidato al puesto electivo de alcalde. Tiene razón.

## II

En lo procesal, la acción debió desestimarse por dos (2) fundamentos. El primero, porque el P.P.D. estaba impedido de instarla una vez su representante, el Comisionado Electoral, certificó su candidatura al Presidente de la Comisión Estatal de Elecciones.

Y el segundo, la cronología expuesta demuestra que el P.P.D. acudió al tribunal *transcurrido* el término de diez (10) días prescrito en el Art. 1.016 que, por interacción armoniosa con el Art. 4.017, ambos de la Ley Electoral de Puerto Rico,[1] rige el caso de autos. Concluir que la acción de desca-

---

[1] El primero, en lo pertinente, lee:

"Cualquier parte afectada por una resolución, determinación y orden de la Comisión Estatal podrá dentro de los diez (10) días siguientes a la notificación de la misma recurrir ante el Tribunal Superior mediante la radicación de un escrito

lificación de aspirantes y candidatos no se gobierna por la regla general de diez (10) días es contrario al principio de hermenéutica de interpretación integral. Sería contradictorio a la premisa que discurre en dicho estatuto, de imprimirle pronta finalidad y adjudicación a controversias de esta índole.

## III

Independientemente de lo expuesto, en sus méritos la sentencia es errónea. Como reconocimos en *García v. Luciano, supra*, pág. 630, ciertamente "no es ajena al espíritu y propósito legislativo la supuesta clasificación. En el contexto de la [Ley Orgánica de los Municipios de Puerto Rico] . . . existe un nexo racional con el objetivo de disuadir a los [incumbentes] de violar sus disposiciones". Después de todo, "[n]o es absoluto ni existe el alegado derecho fundamental a ser candidato a un puesto electivo". Íd.

Ahora bien, en el fondo subsiste el dilema de que la prohibición legislativa presenta un verdadero problema a nivel constitucional por la ausencia de término. La interpretación literal y restrictiva que acogió el tribunal de instancia implica que un alcalde destituido bajo la Ley Orgánica de los Municipios de Puerto Rico puede ser descalificado por este solo fundamento, *en cualquier proceso electoral* posterior,

---

de revisión. *La parte promovente tendrá la responsabilidad de notificar copia del escrito de revisión a la Comisión Estatal y a cualquier parte afectada.*" (Énfasis suplido.) 16 L.P.R.A. sec. 3016a.

El segundo dispone:

"Cualquier aspirante a ser nominado o cualquier candidato debidamente nominado podrá ser descalificado como tal por el Tribunal Superior, cuando no hubiere cumplido con los requisitos impuestos por la Constitución o la ley, o cuando se demostrare que ha violado cualesquiera de las disposiciones de este Subtítulo o de sus reglamentos.

"Radicada una petición de descalificación ante el Tribunal Superior, se celebrará una vista en su fondo y el Tribunal deberá resolver de conformidad con los términos establecidos en la sec. 3016a de este título." 16 L.P.R.A. sec. 3167.

como candidato a todo puesto electivo municipal. Ese enfoque es cuestionable.

Al igual que en *García v. Luciano*, supra, nos inclinamos a refrendar otra interpretación "a tono con el espíritu de los tiempos y las limitaciones de nuestra Constitución . . .". Íd., pág. 630. Bajo este prisma, restringiríamos su aplicación temporal. La destitución debe operar como impedimento al cuatrienio en que es destituido y al posterior. Sin parámetros, la descalificación *absoluta* representa un castigo adicional al ya impuesto. En lo básico, aunque la destitución e inhabilidad ulterior es de naturaleza profiláctica válida, en protección del interés público municipal no podemos negar su carácter punitivo.

Obviamente diez (10) años son más que suficientes. La tesis de inhabilidad perpetua es un castigo improcedente. Atemperarlo según expuesto evita toda incursión y choque en la dimensión constitucional. Es a los electores y sus conciencias a quienes corresponde determinar si su destitución hace trece (13) años inhabilitan para el cargo que aspira Planadeball Poggy.

—O—

Voto de conformidad del Juez Presidente Señor Pons Núñez.

Estamos conformes con la posición mayoritaria, pues ante la letra clara de un estatuto válido creemos que no nos corresponde sustituir nuestro criterio por el del legislador. Sin embargo, deseamos dejar constancia de nuestro criterio, de que entendemos que el juicio sobre la capacidad para servir de un candidato corresponde, salvo en casos extraordinarios, a los electores.