El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
Los hechos del caso revelan que como resultado de los comicios electorales de 2 de noviembre de 2004 —y reconociendo que perdería su franquicia electoral por no haber obtenido los votos requeridos por la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. see. 3001 et seq., para retener su reconocimiento como partido principal— el Partido Independentista Puertorriqueño (P.I.P.) comenzó a llevar a cabo las gestiones necesarias para lograr su reinscripción.(1) A esos efectos, mediante carta de 4 de noviembre de 2004, el Ledo. Juan Dalmau Ramírez, Comisionado Electoral del *781 P.I.P., en su capacidad de Secretario General de dicha colectividad política, le solicitó una autorización al Presidente de la Comisión Estatal de Elecciones, Hon. Aurelio Gracia Morales, para iniciar los procedimientos de reinscripción del partido como partido por petición a nivel isla.(2)
Apenas tres días más tarde, en una reunión llevada a cabo el domingo 7 de noviembre de 2004 —estando presentes los Comisionados Electorales de los tres partidos políticos principales— la Comisión Estatal de Elecciones (Comisión) acordó unánimemente aceptar la antes mencionada solicitud del P.I.P., autorizándole a que comenzara el correspondiente procedimiento de reinscripción. Dicha decisión fue certificada por el Secretario de la Comisión, Ramón M. Jiménez Fuentes, al día siguiente. De forma sucinta y sin expresar fundamento jurídico alguno en apoyo de dicha decisión, en la mencionada certificación se hizo constar el referido acuerdo. Además, se hizo mención a que, en conformidad con el Art. 3.033 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3124a, el P.I.P. mantenía todos los derechos y las prerrogativas sobre su nombre y emblema durante un año a partir de la fecha de las elecciones generales.
El 8 de noviembre de 2004 la agrupación de ciudadanos conocida como Puertorriqueños por Puerto Rico (P.P.R.) solicitó a la Comisión que le autorizara a comenzar su proceso de inscripción como partido por petición a nivel Isla. Por otra parte, ese mismo día y sin tener conocimiento de *782 que se había concedido ya la petición del P.I.P., la agrupación de ciudadanos conocida como el Partido Acción Civil (P.A.C.) —quien también tenía intenciones de inscribirse como partido por petición a nivel isla— a través de su Presidente, el Ledo. Nelson Rosario Rodríguez, presentó ante la Comisión un escrito titulado Solicitud de Acuerdo con el Artículo 1.007 de la Ley Electoral, en el que se opuso a la reinscripción del P.I.P. En dicho escrito argumentó, en síntesis, que debía denegarse la petición del P.I.P. debido a que dicha colectividad política no podía inscribirse antes del 31 de diciembre de 2004, ello porque la See. 8.3 del Reglamento para la Inscripción de Partidos por Petición (Reglamento), pág. 17, aprobado por la Comisión, establecía que no se aceptarían “solicitudes para la inscripción de nuevos partidos desde el 1ro. de junio hasta el 31 de diciembre del año en que se celebren las elecciones generales”.
El P.A.C. alegó, además, que la petición del P.I.P. era prematura debido a que era necesario que, antes de comenzar su proceso de inscripción, fuera privado oficialmente de su certificación como partido principal, hiciera un inventario de sus bienes y cumpliera con lo dispuesto en el Art. 3.026 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3118;(3) ello con el propósito de que no pudiera tener ventajas indebidas sobre las otras agrupaciones que también deseaban convertirse en partidos por petición, ni pudiera utilizar los recursos públicos y la estructura de beneficios electorales de un partido inscrito para el fin privado de inscribirse y recoger firmas.
Luego de enterarse por la prensa del país de la determinación de la Comisión, el 10 de noviembre de 2004 el P.A.C. le envió una carta a la Comisión solicitando que se considerara su escrito como una solicitud de reconsideración, *783 añadiendo a lo argumentado que, para esa fecha, aún no existía la certeza de cuál era el cinco por ciento de los votos obtenidos para el cargo de Gobernador o el tres por ciento total de votos íntegros, razón por la cual no se sabía exactamente cuál era la cantidad de votos que debía obtener el P.I.P. para poder quedar inscrito. Informó, además, que comenzaría su proceso de inscripción después del 31 de diciembre de 2004.
El 12 de noviembre de 2004 el P.A.C. y el P.P.R. —ambos representados por el licenciado Rosario Rodríguez— presentaron ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una demanda sobre violación a sus derechos civiles, sentencia declaratoria e interdicto preliminar y permanente contra el P.I.P., la Comisión, su Presidente, el Hon. Aurelio Gracia Morales, y todos los Comisionados Electorales, a saber: el Ledo. Juan Dalmau Ramírez, el Ledo. Thomas Rivera Schatz y el Ledo. Gerardo Cruz Maldonado.(4) En la demanda reiteraron, en síntesis, los planteamientos esbozados en la Solicitud de Acuerdo con el Art. 1.007 de la Ley Electoral, presentada por el P.A.C. ante la Comisión.
En dicha demanda, los demandantes solicitaron que el foro primario dejara sin efecto la determinación de la Comisión que autorizaba que el P.I.P. pudiera comenzar el proceso de recolección de firmas; que certificara que el P.I.P. ya no era un partido principal; que ordenara al P.I.P. a realizar un inventario que cumpliera con lo dispuesto en el Art. 3.026 de la Ley Electoral de Puerto Rico, ante; que tomara las medidas necesarias en equidad para que el P.I.P. no pudiera utilizar recursos públicos para su inscripción, y que ordenara la cesión de funciones del Comisionado Electoral del P.I.P. y demás funcionarios asignados a su oficina para que no estuvieran en la estructura de la Comisión y no adelantaran la inscripción del P.I.P.(5)
*784 Inicialmente, el 16 de diciembre de 2004 el foro primario, luego de celebrada una vista, desestimó sin perjuicio la referida demanda debido a que, habiendo el P.A.C. impugnado la reinscripción del P.I.P. ante la Comisión, lo prudente era que se agotaran los remedios administrativos y se esperara la decisión de la Comisión antes de acudirse al tribunal.
La Comisión le envió, vía facsímil, dos cartas al P.A.C. de 12 de noviembre de 2004. En la primera le informó que, atendido su escrito de 8 de noviembre de 2004, la Comisión había acordado notificarle oficialmente su decisión de 7 de noviembre de 2004 sobre la solicitud del P.I.P., incluyendo con dicha comunicación una copia de la mencionada certificación. Por otra parte, en la segunda carta la Comisión le notificó que se daba por recibida su comunicación de 10 de noviembre de 2004, pero que ya que habría de celebrarse una vista judicial, no tenía nada que proveer al respecto. Posteriormente, el 18 de noviembre de 2004, la Comisión le envió otra carta al P.A.C. enmendando su última misiva, donde le notificó que en vista de que había una solicitud ante el tribunal de instancia, se reiteraba en la decisión tomada con respecto al asunto planteado.
El P.A.C. y el P.P.R. presentaron una moción de reconsideración ante el tribunal de instancia. En virtud de dicha solicitud, el 24 de noviembre de 2004 el foro primario celebró una vista para dilucidar si procedía o no. Escuchados los argumentos de las partes, y en corte abierta, el tribunal de instancia ordenó la reapertura del caso únicamente en cuanto a las alegaciones de utilización ilegal de fondos públicos y al trato desigual electoral, ya que determinó que las demás alegaciones serían atendidas en el recurso de revisión electoral. Cónsono con ello, declaró “sin lugar” una petición de los demandantes para la consolidación de dicho caso con el recurso de revisión electoral. Así pues, quedaron fragmentadas las controversias entre ambos pleitos.
El 2 de diciembre de 2004 el tribunal de instancia emitió una resolución, plasmando por escrito la antes mencionada determinación. De entrada, destacó que el caso úni *785 camente se reabrió para dilucidar las reclamaciones de uso ilegal de fondos públicos e invocación al derecho de igualdad electoral. Específicamente, con respecto a las alegaciones de igualdad electoral, determinó que el P.A.C., a diferencia del P.P.R., estaba impedido de exigir el mismo trato que el P.I.P., debido a que nunca presentó una solicitud para su inscripción como partido por petición, por lo cual no estaba en la misma situación. Por otra parte, resolvió que el P.P.R. había establecido que no se les estaba garantizando su derecho constitucional a la igualdad electoral. Conforme a ello, el foro primario emitió un interdicto preliminar, ordenando al P.I.P. a “cesar y desistir de usar los equipos tecnológicos comprados o arrendados con el subsidio del Fondo Electoral, en el proceso para su reinscripción, excepto los ordenadores, los que podrán ser utilizados para la verificación de las peticiones de endoso en el horario de 8:30 a.m. a 5:00 p.m.” y a “abstenerse de utilizar el subsidio del Fondo Electoral para pagar deudas del procedimiento de reinscripción”. Apéndice, pág. 292. Además, ordenó a la Comisión a presentar un plan para salvaguardar el derecho constitucional de la igualdad electoral del P.P.R.(6)
El 22 de noviembre de 2004 el P.A.C. y el P.P.R. presentaron un recurso de revisión electoral ante el Tribunal de Primera Instancia, Sala Superior de San Juan, para solicitar la revocación de la determinación de la Comisión que autorizó la reinscripción del P.I.P., haciendo las mismas alegaciones presentadas en el pleito anteriormente incoado ante el foro primario.(7) Luego de varios trámites e inciden *786 tes procesales,(8) se celebró una vista en el caso el 9 de diciembre de 2004. Durante la referida vista, las partes presentaron su prueba con respecto a la procedencia del recurso de revisión y la interpretación del Reglamento, quedando reducida la controversia a si la certificación de la Comisión violaba la See. 8.3 del Reglamento, ante.(9)
Posteriormente, el 28 de diciembre de 2004 el tribunal de instancia emitió una sentencia confirmando el dictamen de la Comisión por entender que dicha entidad había interpretado válidamente su reglamento a la luz de la Ley Electoral de Puerto Rico.(10) Específicamente, resolvió que —aun cuando una lectura de la mencionada See. 8.3 sugería que la Comisión no debía aceptar ninguna petición de inscripción en el período allí contemplado y que, por lo tanto, la certificación aquí en cuestión contravino dicho reglamento— fue la misma Comisión que aprobó el reglamento la que emitió la certificación, luego de haberlo interpretado a la luz de la Ley Electoral de Puerto Rico. A tales efectos, y vía escolio, el tribunal de instancia destacó que, a su juicio y conforme al Art. 1.005 de la ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3013, lo que ocurrió fue una enmienda o modificación al Reglamento para lo cual se re *787 quería el consentimiento unánime de los comisionados electorales.(11)
El foro de instancia determinó, además, que el Reglamento incluía una disposición casi idéntica a lo dispuesto en la Ley Electoral de Puerto Rico, donde se establecía, de igual forma, el 1 de junio del año electoral como la fecha límite para poder presentar una solicitud de inscripción como partido por petición. El referido foro señaló que era evidente que se impusiera dicho límite, antes de que se llevaran a cabo las elecciones generales; sin embargo, resolvió que no parecía existir propósito legítimo alguno detrás de limitar el derecho a solicitar la inscripción de un partido entre la celebración de unas elecciones y el fin del año.
En consecuencia, el tribunal de instancia concluyó que la Comisión —al aplicar la See. 8.3 del Reglamento, autorizando la inscripción del P.I.P. antes de terminar el año electoral— había hecho una interpretación flexible y cónsona con el derecho que, según la Ley Electoral de Puerto Rico, tienen los electores de participar en los procesos de inscripción de partidos políticos. Por último, indicó que los tribunales debían brindar deferencia a las interpretaciones que las agencias administrativas efectuaban con relación a la ley cuya ejecución les fue encomendada por la Legisla *788 tura, ya que en esos casos se presume que la agencia tiene un conocimiento especializado sobre aquellos asuntos que le fueron encomendados.
Ese mismo día —culminado su proceso de recolección de endosos y habiendo cumplido el P.I.P. con todos los requisitos legales para quedar inscrito— la Comisión lo certificó como partido por petición. En virtud de lo anterior, el P.A.C. y el P.P.R. presentaron un segundo recurso de revisión ante el Tribunal de Primera Instancia, Sala Superior de San Juan, caso Civil Núm. KPE05-0049(904). Dicho recurso fue consolidado con el pleito de interdicto preliminar y sentencia declaratoria.(12)
Inconforme, luego de haber presentado una moción de reconsideración ante el foro de instancia que fue denegada el 20 de enero de 2005, el P.A.C. recurrió mediante certiorari ante el Tribunal de Apelaciones. Alegó, en síntesis, que erró el foro primario: al no haber ordenado que el P.I.P. comenzara su inscripción luego de cumplir con lo dispuesto en el Art. 3.026 de la Ley Electoral de Puerto Rico, ante, permitiendo, de esta forma, que se violara su derecho a la igual protección de las leyes y que el P.I.P. utilizara fondos públicos para su reinscripción; al presumir la corrección de la decisión de derecho de la Comisión de no aplicar al P.I.P. lo dispuesto en la See. 8.3 del Reglamento, ante, y al con *789 cluir que la Comisión interpretó válidamente el referido reglamento al autorizar la inscripción del P.I.P., contrario al texto de la referida sección.
Luego de varios trámites e incidentes procesales, el foro apelativo intermedio emitió una sentencia confirmatoria de la emitida por el tribunal de instancia. Primeramente, el foro apelativo determinó, en lo aquí pertinente, que las alegaciones del P.A.C. en torno a la igual protección de las leyes y el trato desigual no estaban maduras para ser adjudicadas por dicho foro en ese momento, ya que la sentencia recurrida del tribunal de instancia se circunscribió a resolver la validez de la certificación emitida por la Comisión el 8 de noviembre de 2004, por lo cual su función revisora se limitaba a lo allí dictaminado. Por otra parte, estableció que aun cuando la Ley Electoral de Puerto Rico ordena la celebración de un juicio de novo ante el Tribunal de Primera Instancia en el proceso de revisión judicial de la decisión de la Comisión, los tribunales tenían que pres-tar deferencia a las interpretaciones de ley que hiciera dicha Comisión, por lo cual procedía aplicar las normas generales del derecho administrativo. De este modo, resolvió que el foro primario aplicó correctamente la normativa vigente al determinar que la decisión de la Comisión era cónsona con la Ley Electoral de Puerto Rico, tras analizar las disposiciones del Reglamento a base de lo dispuesto en dicha pieza legislativa. Finalmente, estableció que coincidía con el foro primario en el hecho de que no encontraba razonable ni que tuviera propósito legítimo alguno que se impusiera un límite a la inscripción de partidos luego de celebrada una elección general. Conforme a ello, concluyó que la prohibición dispuesta en la citada See. 8.3 del Reglamento, al contener un límite en fechas para que un partido pudiera solicitar su inscripción, coartaba los derechos de los electores a participar en la inscripción de ese partido luego de haberse celebrado el evento electoral. Por ser así, el referido foro estableció que, por estar en contravención con los derechos de inscripción de partidos políticos reconocidos en la Ley Electoral de Puerto Rico, la Comisión no *790 estaba obligada a seguir lo dispuesto en su propio reglamento.
Aún insatisfecho, el P.A.C. acudió —vía certiorari— ante este Tribunal alegando, en síntesis, que incidió el foro de instancia al
... concederle deferencia a una determinación de la Comisión que no tiene determinaciones de hechos ni de derecho y que se llevó a cabo en violación [de] su propia ley orgánica.
... al no concluir que la determinación de la Comisión fue arbitraria y caprichosa.
... al permitir que el Partido Independentista Puertorriqueña se inscribiese utilizando recursos públicos. Petición de certiorari, págs. 6-7.
Expedimos el recurso. Contando con la comparecencia de ambas partes y estando en condiciones de resolver, procedemos a hacerlo.
I
En su primer señalamiento de error, el P.A.C. indica que erró el Tribunal de Apelaciones al concederle deferencia a una determinación de la Comisión que no contiene determinaciones de hechos ni de derecho, y que fue acordada en violación de su propia ley orgánica. Entiende que conforme al Art. 1.016 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3016a, no podía utilizarse el criterio de deferencia a la decisión de la Comisión utilizado generalmente en los casos administrativos, sino que debía efectuarse un juicio de novo.
El procedimiento de la revisión de las decisiones de la Comisión está regulado por las disposiciones del Art. 1.016 de la Ley Electoral de Puerto Rico, ante. A tales efectos, el referido Art. 1.016 establece, en lo aquí pertinente, que
[c]ualquier parte afectada por una resolución, determinación y orden de la Comisión Estatal podrá dentro de los diez (10) días siguientes a la notificación de la misma recurrir ante *791 el Tribunal de Primera Instancia mediante la radicación de un escrito de revisión. La parte promovente tendrá la responsabilidad de notificar copia del escrito de revisión a la Comisión Estatal y a cualquier parte afectada.
El Tribunal de Primera Instancia celebrará una vista en su fondo, recibirá evidencia y formulará las determinaciones de hecho y conclusiones de derecho que correspondan. El Tribunal deberá resolver dicha revisión dentro de un término no mayor de veinte (20) días, contados a partir de la fecha de sometida la misma.
Surge de la referida disposición estatutaria que la Asamblea Legislativa estableció que la revision de las decisiones de la Comisión serIa mediante un juicio de novo. Miranda v. C.E.E., 141 D.P.R. 775, 784 (1996), citando a P.N.P. v. Rodríguez Estrada, Pres. C.E.E., 123 D.P.R. 1, 30-31 (1988). Véanse, además: López v. C.E.E., 161 D.P.R. 527, 541 (2004); P. Fernández, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogota, Ed. Forum, 2001, pág. 582.
En cuanto a los fundamentos que tuvo la Legislatura para aplicar un. criterio de revision más riguroso a las determinaciones de la Comisión que el que usualmente se utiliza para la revision de las agencias administrativas, este Tribunal ha sefialado que esto lo exige y propicia "[t]anto la dinámica organizacional de la Comisión Estatal -controlada por los partidos polIticos- como la forma particular en que se toman allI las decisiones". Granados v. Rodríguez Estrada I, 124 D.P.R. 1, 19 (1989). AsI pues, he-mos establecido que ya que "[has decisiones de la ComisiOn Estatal están sujetas a las presiones e intereses partidistas", se justifica que en el escrutinio de las decisiones que emite la Comisión la revision judicial sea más abarcadora.
Conforme a lo anterior, al evaluar una decision de la Comisión, el tribunal de instancia no está limitado por el expediente de la agencia, sino que puede recibir "cualquier prueba que presenten las partes a su favor, independientemente de que no haya sido presentada a la agencia admi *792 nistrativa, y evaluarla según su propio criterio sin necesidad de conferirse deferencia a la decisión administrativa”. Román Ruiz v. E.L.A., 150 D.P.R. 639, 647 (2000). Véanse, además: Granados v. Rodríguez Estrada I, ante, pág. 19; P.N.P. v. Rodríguez Estrada, Pres. C.E.E., ante, pág. 31. De este modo, el foro primario tiene la obligación “de celebrar una vista en su fondo, recibir evidencia y hacer sus propias determinaciones de hecho y conclusiones de derecho al revisar las decisiones” de la Comisión. P.N.P. v. Rodríguez Estrada, Pres. C.E.E., ante, pág. 31. Véanse, además: Granados v. Rodríguez Estrada I, ante, págs. 22-23; Fernández Quiñones, op. cit, pág. 582.
Vale la pena señalar, como correctamente concluyó el Tribunal de Apelaciones, que hemos establecido que el tribunal de instancia debe, en aquellos casos en que la determinación de la Comisión dependa principal o exclusivamente de una cuestión de derecho electoral especializado, guardar la usual deferencia al mencionado organismo administrativo. Granados v. Rodríguez Estrada I, ante, págs. 20-21.
Independientemente de lo antes expresado y de si a la luz de dichos hechos la decisión de la Comisión debía o no ser objeto de deferencia de parte del foro judicial, el error no fue cometido; ello en vista de que el foro de instancia —aun cuando al final de su sentencia mencionó que las decisiones de las agencias se presumen correctas y merecen la deferencia de los tribunales— confirmó la decisión de la Comisión luego de, efectivamente, haber celebrado una vista, recibido prueba y haber escuchado los planteamientos de las partes. El tribunal de instancia llegó a su determinación luego de hacer su propio análisis e interpretación del Reglamento. Conforme a lo anterior, resulta evidente que aun cuando el foro primario mencionó que se presumían válidas las decisiones administrativas, dicho foro cumplió con la obligación impuesta por el Art. 1.016 de la Ley Electoral de Puerto Rico, ante.
*793 II
El segundo señalamiento de error del peticionario se reduce a que determinemos la validez, propiamente, de la decisión de la Comisión de autorizar la solicitud del P.I.P. de comenzar su proceso de inscripción antes que terminara el año eleccionario de 2004.
Como es sabido, “[e]n el Preámbulo de nuestra Constitución se recalca la importancia de la democracia para la vida de la comunidad puertorriqueña y lo fundamental del voto para la existencia de esa democracia”. Ortiz Angleró v. Barreto Pérez, 110 D.P.R. 84, 92 (1980). Cónsono con lo anterior, este Tribunal ha enfatizado que el derecho al voto es fundamental y “uno de los derechos más preciados de nuestra ciudadanía”, siendo un “pilar de nuestro sistema democrático”. Granado v. Rodríguez Estrada I, ante, pág. 6. Véanse, además: P.A.C. v. E.L.A. I, 150 D.P.R. 359, 387 (2000); P.P.D. v. Planadeball Poggy, 121 D.P.R. 570 (1988); García v. Luciano, 115 D.P.R. 628 (1984); P.P.D. v. Admor. Gen. de Elecciones, 111 D.P.R. 199 (1981).
En específico, la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho al sufragio universal estableciendo que “[l]as leyes garantizarán la ex-presión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral”. Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 278. Véase, además, Granados v. Rodríguez Estrada I, ante.
Con respecto a dicho derecho, hemos establecido que, en su dimensión de participación política, éste “comprende el derecho a formar agrupaciones para participar en el proceso electoral”. P.A.C. v. E.L.A. I, ante, pág. 372. Véase Giménez v. J.E.E., 96 D.P.R. 943 (1968). De este modo, este Tribunal ha señalado que “[e]n nuestro es *794 quema de derecho constitucional, el derecho al voto no tan sólo comprende el derecho del elector a votar en las elecciones, sino que abarca el derecho a que se incluyan en las papeletas las opciones que reflejan las corrientes políticas contemporáneas del elector”. P.A.C. v. E.L.A. I, ante, pág. 372, citando a Ortiz Angleró v. Barreto Pérez, ante. Esto es así ya que los partidos son vehículos de la voluntad electoral y, al estar investidos de poderes cuasi gubernamentales, son elementos básicos e indispensables de toda democracia a través de los cuales se canalizan pacíficamente las distintas tendencias políticas y económicas de la sociedad en un momento dado. Véanse: P.A.C. v. E.L.A. I, ante; P.A.C. v. C.E.E., 149 D.P.R. 244, 254-255 (1999); P.P.D. v. Gobernador I, 139 D.P.R. 643, 668-669 (1995); Granados v. Rodríguez Estrada I, ante, pág. 23 esc. 12; P.R.P. v. E.L.A., 115 D.P.R. 631 (1984); P.S.P. v. Com. Estatal de Elecciones, 110 D.P.R. 400, 406 (1987); García Passalacqua v. Tribunal Electoral, 105 D.P.R. 49 (1976).
Ahora bien, no obstante la importancia del derecho al voto y al de formar agrupaciones políticas, estos derechos no son absolutos ni “tiene [n] credenciales de inimpugnabilidad” y la Asamblea Legislativa tiene la “facultad de regular el ejercicio de ese derecho y todo lo concerniente al proceso electoral”. P.N.P. v. Rodríguez Estrada, Pres. C.E.E., ante, pág. 29. Véanse, además, P.A.C. v. E.L.A. I, ante; P.S.P. v. Com. Estatal de Elecciones, ante. Ello lo preceptúa nuestra Constitución, al establecer que “[s]e dispondrá por ley todo lo concerniente al proceso electoral y de inscripción de electores, así como lo relativo a los partidos políticos y candidaturas”. Art. VI, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 425. Véanse: P.R.P. v. E.L.A., ante; P.S.P., P.P.D., P.I.P. v. Romero Barceló, 110 D.P.R. 248, 255 (1980); P.N.P. v. Tribunal Electoral, 104 D.P.R. 741, 749-750 (1976).
Conforme a dicho mandato constitucional, este Tribunal ha reiterado que la Asamblea Legislativa tiene *795 una amplia facultad y un amplio margen de autoridad para legislar en asuntos de materia electoral y regular el proceso electoral. P.S.P. v. Com. Estatal de Elecciones, ante, pág. 405. Véanse: Ramírez de Ferrer v. Mari Brás, 144 D.P.R. 141 (1997); P.P.D. v. Admor. Gen. de Elecciones, ante; P.S.P., P.P.D., P.I.P v. Romero Barceló, ante; P.N.P. v. Tribunal Electoral, ante. Véase, además, R. Serrano Geyls, Derecho constitucional de Estados Unidos y Puerto Rico, San Juan, Ed. C. Abo. P.R., 1988, Vol. II, págs. 1205-1206. Específicamente, y dentro de la aludida facultad de la Legislatura, hemos reconocido como lícita y apremiante “toda reglamentación que, sin obstaculizar innecesariamente el voto, propenda a la realización de un proceso electoral justo, ordenado, libre de fraude, honesto e íntegro”. P.S.P. v. Com. Estatal de Elecciones, ante, págs. 405-406. Véanse, además: P.A.C. v. E.L.A. I, ante; P.S.P., P.P.D., P.I.P. v. Romero Barceló, 110 D.P.R. 248 (1980); García Passalacqua v. Tribunal Electoral, ante, pág. 69 esc. 9; P.N.P. v. Tribunal Electoral, ante.
En virtud de la referida delegación constitucional, la Asamblea Legislativa aprobó la Ley Electoral de Puerto Rico, a través de la cual estableció, entre otras cosas, los requisitos, los detalles, los trámites y las formalidades requeridos para la inscripción de partidos políticos. Primeramente y conforme a nuestro ordenamiento constitucional, el antes mencionado estatuto reconoció —para garantizar el libre ejercicio de la franquicia electoral y lograr la más clara expresión de la voluntad del pueblo— el derecho del elector a participar en la inscripción de partidos y en la inscripción de candidaturas independientes. Art. 2.001 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3051(4). Conforme a lo anterior, se estableció y definió en dicho estatuto lo que significaba ser un partido político. A tales efectos, dicha ley definió partido político, en general, como un partido principal, partido por petición, partido local por petición y partido coligado. Art. 1.003 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3003(38).
*796 Específicamente, esta definición “nos remite, a su vez, a las definiciones particulares que nuestra ley electoral provee de las distintas formas en que estatutariamente puede quedar constituido un ‘partido’ Guadalupe v. C.E.E., 165 D.P.R. 106, 114 (2005). En lo aquí pertinente, en dicho estatuto se define de forma general “partido por petición” como
... cualquier agrupación de ciudadanos que, con el propósito de figurar en las papeletas electorales de unas elecciones generales, se inscriba como partido político en la Comisión Estatal de Elecciones mediante la radicación de peticiones juradas al efecto, suscritas por un número de electores no menor del cinco (5) por ciento del total de votos depositados para todos los candidatos al cargo de Gobernador del Estado Libre Asociado de Puerto Rico en la elección general precedente .... Art. 1.003 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3003(41).
Es de notar que en la referida definición general de lo que es un “partido por petición” no se establece límite alguno de fecha con respecto a cuándo deben presentarse las solicitudes para la inscripción de un partido durante un año electoral.
No obstante lo anterior, en otra disposición de la Ley Electoral de Puerto Rico, además de mencionarse lo establecido en la antes mencionada definición, la Legislatura estableció expresamente que las solicitudes para inscribir un partido por petición tenían que ser presentadas en o antes del 1 de junio del año eleccionario. A tales efectos, dicho estatuto dispone que
[s]e considerará como “Partido por Petición” a cualquier agrupación de ciudadanos que, con el propósito de figurar en la papeleta electoral de unas elecciones generales, en o antes del primero de junio del año de elecciones se inscriba como partido político, mediante la radicación ante la Comisión de peticiones juradas al efecto, ante notarios públicos admitidos al ejercicio de la notaría, a tenor con lo dispuesto por la Ley Notarial vigente, quienes percibirán de la Comisión Electoral un dólar por cada petición notarizada válida como honorarios suscritas por un número de electores no menor del cinco (5) por ciento del total de votos depositados para todos los candi *797 datos al cargo de Gobernador en la elección general precedente. Debiéndose presentar, además, un programa de gobierno o plataforma política, así como los nombres y direcciones de un grupo de electores que constituyan su organismo directivo central. Art. 3.001 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3101.
Por otra parte, a través de dicha pieza legislativa, la Legislatura creó la “Comisión Estatal de Elecciones”. Art. 1.004 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3004. Con respecto a dicho organismo, he-mos señalado que su “ ‘estructura básica administrativa y decisional responde a una visión de un sistema electoral político contencioso en que se detectan tres notas sobresalientes: (1) impone a los partidos políticos la responsabilidad de estructurar e inspeccionar todos los procedimientos de naturaleza electoral a regir en los procesos eleccionarios; (2) que la formulación e implementación de ese mandato se logren mediante el consenso unánime de los partidos; y (3) que de ese proceso se ejerza la mutua fiscalización partidista’ ”. (Énfasis suplido.) Granados v. Rodríguez Estrada I, ante, pág. 21, citando a RS.P. v. Com. Estatal de Elecciones, ante, págs. 406-407. Así pues, la Legislatura facultó a la Comisión para que estableciera los reglamentos necesarios para la inscripción de partidos.
En cumplimiento con dicha encomienda, el 23 de enero de 2002 la Comisión —con el consentimiento de to-dos los Comisionados Electorales— aprobó el Reglamento con el propósito de estructurar el proceso de inscripción de los partidos por petición y partidos locales por petición.(13) En dicho reglamento se adoptó por referencia la antes mencionada definición de “partido por petición” establecida en la Ley Electoral de Puerto Rico. Sec. 1.3 del Reglamento. El mencionado reglamento, además de establecer los requisitos para la inscripción de los partidos por petición, establece, en la See. 8.3, ante, que la Comisión no *798 aceptará solicitudes para la inscripción de nuevos partidos desde el 1 de junio hasta el 31 de diciembre del año en que se celebren las elecciones generales. Ciertamente, dicha disposición reglamentaria lo que en última instancia hace es establecer un período específico de tiempo —con comienzo y final— durante el cual no se pueden presentar las solicitudes de partido por inscripción.
Por ser así —y habiendo el P.I.P. presentado su solicitud para inscribir el partido dentro del período de tiempo que contempla y prohíbe la antes mencionada See. 8.3 del Reglamento— debemos resolver si la actuación de la Comisión, con el voto unánime de los Comisionados Electorales con el que se aprobó la referida solicitud de inscripción, es válida en derecho.
Como recordaremos, tanto el tribunal de instancia como el tribunal apelativo intermedio consideraron, en síntesis, que la actuación de la Comisión había sido válida en derecho, ya que no obstante la referida See. 8.3 establecer un período de veda para la inscripción de partidos por petición, esta prohibición no era razonable ni tenía propósito legítimo alguno; esta actuación coartaba los derechos de los electores a participar en la inscripción de partidos, y que la actuación unánime de los Comisionados Electorales, con la que aprobaron la solicitud del P.I.P., había tenido el efecto de enmendar el Reglamento.
HH I—I HH
Sabido es que las decisiones de la Comisión —foro administrativo que tiene una organización política— deben fundarse en la vigencia plena del estado de derecho y en la protección de los derechos políticos y sociales que entran en juego en la administración de la Ley Electoral de Puerto Rico, no en preferencias políticas. Véase Granados v. Rodríguez Estrada I, ante, citando a Partido Nuevo Progresista v. J.E.E., 96 D.P.R. 961, 962—963 (1968). Los acuerdos de la Comisión tienen que ser conforme a la ley y a la Constitución, es decir, están limitados por éstas. *799 P.N.P. y P.I.P. v. Rodríguez Estrada, 122 D.P.R. 490, 515-516 (1988).
Debe enfatizarse, por otro lado, que por su naturaleza, a la Comisión le aplican normas vigentes elementales en derecho administrativo, tales como que un reglamento promulgado para implementar la ejecución de una ley puede complementarla, pero no estar en conflicto con ésta. Véase Ex parte Irizarry, 66 D.P.R. 672, 676 (1946). Dicho de otra manera, un reglamento o una actuación administrativa claramente en conflicto, o contra la ley, es nulo. P.S.P. v. Com. Estatal de Elecciones, 110 D.P.R. 400, 409 (1987); Infante v. Trib. Examinador Médicos, 84 D.P.R. 308 (1961).
Esto es así ya que, conforme expresáramos en Perfect Cleaning v. Cardiovascular, 162 D.P.R. 745, 758-759 (2004), “es norma altamente conocida que la autoridad de una agencia administrativa para aprobar reglas o reglamentos surge directamente de su ley habilitadora” y que ésta descansa “en la premisa de carácter absoluto de que el poder de aprobar reglas y reglamentos no puede trascender la autoridad delegada”. (Enfasis suplido.)
Por otra parte, procede que enfaticemos lo resuelto en Ex parte Irizarry, ante, en cuanto a que el texto de una ley jamás debe entenderse modificado o suplantado por el reglamentario correspondiente, y que en cualquier conflicto entre el texto de la ley y su reglamento debe prevalecer el de la ley. Por último, resulta altamente pertinente a la controversia ante nuestra consideración, lo ex-presado por este Tribunal en el caso Ex parte Irizarry, ante, pág. 676, en cuanto a que el “fin perseguido al delegar el poder de reglamentación no puede ser otro que el de implementar la ejecución de la ley pero nunca puede ese poder ejercitarse en tal forma que sustituya al criterio del legislador por el de la junta ...” (Énfasis suplido.)
Como hemos visto, la Legislatura estableció, en lo pertinente, que “[s]e considerará como ‘Partido por Petición’ a cualquier agrupación de ciudadanos que, con el propósito *800 de figurar en la papeleta electoral de unas elecciones generales, en o antes del primero de junio del año de elecciones se inscriba como partido político, mediante la radicación ante la Comisión de peticiones juradas al efecto (Enfasis suplido.) 16 L.P.R.A. see. 3101(3).
El propósito detrás del requisito de la presentación de las peticiones en o antes del primero de junio del año en que se celebran las elecciones generales es obvio: la Comisión necesita tiempo para pasar juicio, y resolver, la solicitud presentada y para, de cumplir esa agrupación de ciudadanos con todos los requisitos exigidos, poder asegurarse que dicho partido por petición aparezca en las papeletas de votación correspondiente.
Es importante resaltar que la Legislatura no estableció una prohibición como la establecida por la Comisión mediante la Sec. 8.3 de su Reglamento. Es claro, pues, que no medió intención legislativa alguna de limitar la presentación de solicitudes para la inscripción de nuevos partidos desde el 1 de junio hasta el 31 de diciembre del año en que se celebren elecciones generales, solicitudes que evidentemente procurarfan la inscripción de partidos para elecciones posteriores a las de ese aflo. La Legislatura sencillamente no lo hizo.
Consideramos que la Comisión no estaba facultada para exigir o añadir un requisito o limitación que el legislador no tuvo a bien establecer. Se excedió la Comisión en sus facultades al establecer, en la See. 8.3 del Reglamento, ante, que no aceptaría solicitudes para la inscripción de nuevos partidos desde el 1 de junio hasta el 21 de diciembre del año en que se celebren elecciones generales. Su acción es “ultra vires”, contraria a la ley y, por lo tanto, nula. Véanse: Cleaning v. Cardiovascular, ante; Ex parte Irizarry, ante.
*801 IV
Por último, en su tercer señalamiento de error, la peticionaria aduce que erró el Tribunal de Apelaciones al permitir que el P.I.P. se inscribiese con recursos públicos al concluir que la controversia del uso ilegal de fondos públicos y violación a la igual protección de las leyes no estaba madura por razón de que el foro primario no abordó el asunto en el recurso de revisión, sino que se estaba litigando en el pleito del interdicto preliminar y sentencia declaratoria.
Con respecto a dicho señalamiento de error, basta con expresar que en este caso no existe controversia en cuanto a que la peticionaria presentó dos recursos distintos ante dos salas del tribunal de instancia que surgieron de la determinación de la Comisión, a saber: (1) un recurso de revisión administrativo, caso Civil Núm. KPE04-3623(907), que es el que tenemos ante nuestra consideración en este momento, y (2) una demanda de remedio interdictal y de sentencia declaratoria, caso Civil Núm. KPE043623(904).(14)
Al actuar así se creó una dicotomía con respecto a las salas del foro primario que estaban atendiendo las alegaciones de la peticionaria, aun cuando todas tenían su origen en la resolución de la Comisión de autorizar la inscripción del P.I.P. Por una parte, ante la sala del tribunal de instancia que tenía el presente recurso de revisión administrativa se estaba dilucidando exclusivamente la controversia con respecto a la validez de la certificación emitida por la Comisión conforme a la See. 8.3 del Reglamento, ante. Por otra parte, ante la sala del foro primario que está atendiendo el interdicto preliminar y la sentencia declaratoria, se están dilucidando las reclamaciones de utilización *802 ilegal de fondos públicos por parte del P.I.P. y el trato desigual electoral.
Dicha fragmentación de controversias fue consecuencia directa de las actuaciones de la peticionaria y surge claramente de dictámenes emitidos por ambas salas del foro primario. Particularmente, en la resolución del foro primario, atendiendo el interdicto preliminar, éste fue enfático al señalar que reabriría el caso únicamente con respecto a las alegaciones de utilización de fondos públicos y trato desigual electoral, debido a que la determinación de la validez de la decisión de la Comisión se estaba dilucidando en el recurso de revisión administrativa. Por otra parte, el tribunal de instancia, en el recurso de revisión administrativa, estableció expresamente en su sentencia que sólo estaba resolviendo la controversia con respecto a la posible violación de la Comisión de la See. 8.3 al aprobar el Reglamento.
Más aún, el presidente y representante legal del P.A.C., a través de una moción en cumplimiento de orden presentada ante la sala del foro primario ante la cual se encuentra el pleito del remedio interdictal, expresamente aceptó lo anterior al señalar que “[r]ecordará el Honorable Tribunal que se reconsideró y se reabrió el caso KPE-04-3481 sólo a los fines de atender los asuntos relacionados a la violación a la igual protección de las leyes y el mal uso de fondos públicos para fines privados”. Más adelante agregó lo siguiente: “[s]urge de la sentencia del 28 de diciembre de 2004, dictada en la solicitud de revisión KPE-04-3623, que dicha sentencia sólo resolvió la controversia de si hubo violación o no por parte de la Comisión a la See. 8.3 del Reglamento. En esa sentencia no se examinó la controversia en cuanto al uso de fondos públicos ni a la violación a la igual protección de las leyes.” Por último, indicó: “[r]ecordará además el Honorable Tribunal que se solicitó la consolidación de la solicitud de revisión KPE-04-3623 con el pleito KPE-04-3481. Este Honorable Tribunal no consolidó esos pleitos.” Apéndice, págs. 139-141.
*803 En dicha moción se aceptó todo lo anterior para argumentar que no debía darse por desistido con peijuicio a P.P.R. de lo argumentado en el segundo recurso de revisión electoral, ya que por ser distintas las controversias presentadas en ambos recursos, el P.P.R. sólo había desistido de sus reclamaciones en el recurso de revisión electoral aquí en cuestión.
Habiéndose fragmentado las controversias, el foro primario nunca tuvo ante sí las antes mencionadas alegaciones de utilización de fondos públicos y trato desigual en este recurso; únicamente pasó juicio sobre la validez del acuerdo unánime de la Comisión. Por ser así, el tribunal apelativo intermedio solamente podía revisar y resolver la controversia que fue debidamente planteada ante el tribunal de instancia, de la cual se está revisando la determinación; es decir, sólo podía revisar la validez de la autorización dada por la Comisión para que el P.I.P. comenzara su proceso de inscripción. Conforme a lo anterior, consideramos que no erró el Tribunal de Apelaciones al limitar su función revisora a la controversia con respecto a la validez de la certificación emitida por la Comisión autorizando la inscripción del P.I.P. antes que finalizara el año eleccionario; ello en vista de que el tribunal de instancia en el recurso de revisión no resolvió ni tuvo ante su consideración ninguna otra alegación.
V
Por los fundamentos antes expresados, procede confirmar la sentencia emitida por el Tribunal de Apelaciones el 30 de junio de 2005, en cuanto dicho foro validó la inscripción del Partido Independentista Puertorriqueño.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado sin opinión escrita.

C1) En específico, la Ley Electoral de Puerto Rico requiere una cantidad determinada de votos para que un partido principal retenga su franquicia electoral. A esos efectos, establece que “partido principal” es aquel que en la elección general precedente: (1) obtenga en el encasillado correspondiente a su insignia en la papeleta para Gobernador y Comisionado Residente una cantidad de votos no menor del siete por ciento del total de votos depositados para todas las insignias de partidos; (2) aquel que en la papeleta para Gobernador y Comisionado Residente obtenga una cantidad no menor del tres por ciento del total de papeletas íntegras depositadas para todos los partidos, o (3) aquel cuyo candidato a Gobernador obtenga una cantidad no menor de cinco por ciento del total de votos depositados para todos los candidatos a dicho cargo. Arts. 1.003 y 3.001 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sees. 3003(42) y 3101(1).

 Conforme a la Ley Electoral de Puerto Rico y al Reglamento para la Inscripción de Partidos por Petición, aprobado por la Comisión Estatal de Elecciones el 23 de enero de 2002, se considera “partido por petición” cualquier agrupación de ciudadanos que, con el propósito de figurar en las papeletas electorales de unas elecciones generales, en o antes del primero de junio del año de elecciones, se inscriba como partido político, se inscriba como partido político en la Comisión Estatal de Elecciones (Comisión) mediante la presentación de peticiones juradas al efecto, suscritas por un número de electores no menor del cinco por ciento del total de votos depositados para todos los candidatos al cargo de Gobernador del Estado Libre Asociado de Puerto Rico en la elección general precedente. Arts. 1.003 y 3.001 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sees. 3003(41) y 3101(3); Secs. 1.4 y 4.1 del Reglamento para la Inscripción de Partidos por Petición de la Comisión Estatal de Elecciones (Reglamento).

 El referido Art. 3.026 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3118, establece, en lo aquí pertinente: “En caso de desaparecer un partido político, cualquier equipo o propiedad adquirida con dinero proveniente del Fondo Electoral deberá ser devuelto a la Comisión Electoral, por el Presidente incumbente al momento de la desaparición del partido en cuestión.”

 Dicho caso tenía el Núm. KPE04-348K904) en el tribunal de instancia.

 Ese mismo día, la Comisión autorizó la agrupación de ciudadanos Puertorriqueños por Puerto Rico (P.P.R.) a comenzar con los procedimientos para quedar inscrito como partido por petición.

 Es preciso señalar que la Comisión nunca presentó dicho plan.

 Así las cosas, el Partido Independentista Puertorriqueño (P.I.P.) y su Comisionado Electoral presentaron una moción de desestimación ante el foro de instancia alegando, en síntesis, que ambas organizaciones no eran partes apropiadas en un recurso dirigido contra la Comisión, que fue la agencia que emitió el dictamen; que el Partido Acción Civil (P.A.C.) carecía de legitimación activa para reclamar derechos debido a que no le había solicitado a la Comisión que le autorizara a comenzar su procedimiento de inscripción como lo había hecho el P.I.P.; que procedía desestimar el recurso con respecto al P.P.R. ya que había obtenido lo mismo que se impugnaba en el recurso, y que el caso constituía cosa juzgada por lo resuelto en el pleito del remedio interdictal y en la sentencia declaratoria.

 Acompañaron dicho recurso con una solicitud de interdicto provisional en auxilio de jurisdicción del tribunal. Dicho caso tenía el Núm. KPE04—3623(907) en el foro primario.

 Durante dicha vista se dilucidó, además, la antes mencionada moción de desestimación y otra moción presentada por el P.I.P. y su Comisionado Electoral, en la que solicitaba la descalificación del licenciado Rosario Rodríguez debido a la existencia de un alegado conflicto de interés cuando dicho abogado representó tanto al P.A.C. como al P.P.R., quien también había obtenido que la Comisión le autorizara a comenzar su proceso de inscripción antes de que se terminara el año eleccionario. Para subsanar dicho conflicto, en la referida vista el P.P.R. desistió de su reclamación en el recurso de revisión electoral.

 De entrada, declaró “sin lugar” la moción de desestimación debido a que aun cuando el P.I.P. y su Comisionado Electoral no eran partes indispensables, sí eran necesarias; señaló que el P.A.C. tenía legitimación activa porque fue opositor en el proceso de inscripción del P.I.P. y que tenía derecho a recurrir al tribunal para impugnar la decisión de la Comisión, y dispuso que no existía cosa juzgada debido a que en el otro pleito ante el tribunal de instancia no se hizo determinación alguna con relación a la validez de la certificación de la Comisión a la luz de la See. 8.3 del Reglamento, ante.

 Dicho Art. 1.005 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. see. 3013, dispone, en lo relevante a la controversia ante este Tribunal, que:
“La Comisión Estatal de Elecciones será responsable de planificar, organizar, estructurar, dirigir y supervisar el organismo electoral y todos los procedimientos de naturaleza electoral que, conforme este subtítulo y sus reglamentos, rijan en cualquier elección a celebrarse en Puerto Rico. En el desempeño de tal función, tendrá, en adición, a cualesquiera otros dispuestos en este subtítulo, los siguientes deberes:
“(Z) Aprobar y adoptar las reglas y reglamentos que fueren necesarios para implantar las disposiciones de este subtítulo bajo su jurisdicción, los cuales tendrán vigencia, previa notificación al Gobernador y a la Asamblea Legislativa de Puerto Rico mediante publicación al efecto en dos (2) periódicos de circulación general, dos (2) veces en un lapso de dos (2) semanas, sin que sea necesario el cumplimiento de las disposiciones de las sees. 2101 et seq. del Título 3, conocidas como ‘Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico’.

“Cualquier enmienda o modificación a los reglamentos aprobados por la Comisión requerirá el voto unánime de los Comisionados Electorales ...”

 Es preciso señalar que el 28 de marzo de 2005, el P.A.C. y el P.P.R. presentaron una moción en los casos consolidados para cumplir con una orden del tribunal de instancia de que se expresara con respecto a una moción de desestimación con perjuicio del P.I.P. En ésta los demandantes hicieron constar lo siguiente:
“Recordará el Honorable Tribunal que se reconsideró y se reabrió el caso KPE-04-3481 sólo a los fines de atender los asuntos relacionados a la violación a la igual protección de las leyes y el mal uso de fondos públicos para fines privados. Por otro lado, en la solicitud de revisión KPE-04-3623 se alega que se equivocó la Comisión Estatal de Elecciones (Comisión) al no aplicar al PIP la sección 8.3 del Reglamento de Inscripción de Partidos por Petición.
“Surge de la sentencia del 28 de diciembre de 2004, dictada en la solicitud de revisión KPE-04-3623, que dicha sentencia sólo resolvió la controversia de si hubo violación o no por parte de la Comisión a la sección 8.3 del Reglamento. En esa sentencia no se examinó la controversia en cuanto al uso de fondos públicos ni a la violación a la igual protección de las leyes.
“Recordará además el Honorable Tribunal que se solicitó la consolidación de la solicitud de revisión KPE-04-3623 con el pleito KPE-04-3481. este Honorable Tribunal no consolidó esos pleitos.” (Énfasis suplido.) Apéndice, págs. 139-141.

 En ese momento los Comisionados Electorales eran los mismos que participaron en la decisión que se impugna en el presente caso, excepto la Comisionada Electoral del P.I.P., quien en ese momento era Damaris Mangual Vélez.

 Como mencionamos anteriormente, dicho caso fue consolidado con el segundo recurso de revisión presentado por el P.A.C. y el P.P.R., caso Civil Núm. KPE05-0049, cuando la Comisión certificó al P.I.P. como partido por petición.