EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Partido Acción Civil<br><br>    Peticionario<br><br>        vs.<br><br>Partido Independentista Puertorriqueño, Comisión Estatal de Elecciones, Aurelio Gracia, Gerardo Cruz, Thomas Rivera, Juan Dalmau y Estado Libre Asociado de Puerto Rico<br><br>    Recurridos | Certiorari<br><br>2006 TSPR 193<br><br>169 DPR \_\_\_\_ |

Número del Caso: CC-2005-0983

Fecha: 29 de diciembre de 2006

Tribunal de Apelaciones:

        Región Judicial de San Juan- Panel III

Juez Ponente:

        Hon. Zadette Bajandas Vélez

Abogados de la Parte Peticionaria:

        Lcdo. Nelson Rosario Rodríguez
        Lcdo. Julio Villalona Viera

Abogados de la Parte Recurrida:

        Lcdo. Pedro E. Ortiz Alvarez
        Lcdo. Denis Márquez Lebrón
        Lcdo. José E. Torres Valentín
        Lcdo. Roberto Busó Aboy
        Lcdo. Carlos Iván Gorrín Peralta
        Lcdo. Ramón L. Walter Merino
        Lcdo. José A. Carlo Rodríguez
        Lcdo. Ángel Luis Alicea Montañez

Materia: Revisión Electoral

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Partido Acción Civil

    Peticionario

       vs.

| | | |
|---|---|---|
| Partido Independentista Puertorriqueño, Comisión Estatal de Elecciones, Aurelio Gracia, Gerardo Cruz, Thomas Rivera, Juan Dalmau y Estado Libre Asociado de Puerto Rico | CC-2005-983 | CERTIORARI |

    Recurridos


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 29 de diciembre de 2006

Los hechos del caso revelan que como resultado de los comicios electorales de 2 de noviembre de 2004 --y reconociendo que perdería su franquicia electoral por no haber obtenido en dichos comicios los votos requeridos por la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. § 3001 *et seq.*, para retener su reconocimiento como partido principal-- el Partido Independentista Puertorriqueño, en adelante P.I.P., comenzó a llevar a cabo las gestiones necesarias para

lograr su reinscripción.[1] A esos efectos, mediante carta con fecha 4 de noviembre de 2004, el Lcdo. Juan Dalmau Ramírez, Comisionado Electoral del P.I.P., en su capacidad de Secretario General de dicha colectividad política, le solicitó autorización al Presidente de la Comisión Estatal de Elecciones, Hon. Aurelio Gracia Morales, para iniciar los procedimientos de reinscripción del partido como partido por petición a nivel isla.[2]

---

[1] En específico, la Ley Electoral de Puerto Rico requiere una cantidad determinada de votos para que un partido principal retenga su franquicia electoral. A esos efectos, dicha pieza legislativa establece que "partido principal" es aquel que en la elección general precedente: (1) obtenga en el encasillado correspondiente a su insignia en la papeleta para Gobernador y Comisionado Residente una cantidad de votos no menor del siete por ciento del total de votos depositados para todas las insignias de partidos; (2) aquél que en la papeleta para Gobernador y Comisionado Residente obtenga una cantidad no menor del tres por ciento del total de papeletas íntegras depositadas para todos los partidos; o (3) aquél cuyo candidato a Gobernador obtenga una cantidad no menor de cinco por ciento del total de votos depositados para todos los candidatos a dicho cargo. Artículos 1.003 y 3.001 de la Ley Electoral, 16 L.P.R.A. § 3003(42) y 3101(1), respectivamente.

[2] Conforme a la Ley Electoral de Puerto Rico y el Reglamento para la Inscripción de Partidos por Petición aprobado por la Comisión Estatal de Elecciones el 23 de enero de 2002, se considera "partido por petición" cualquier agrupación de ciudadanos que, con el propósito de figurar en las papeletas electorales de unas elecciones generales, en o antes del primero de junio del año de elecciones, se inscriba como partido político, se inscriba como partido político en la Comisión Estatal de Elecciones mediante la radicación de peticiones juradas al efecto, suscritas por un número de electores no menor del cinco por ciento del total de votos depositados para todos los candidatos al cargo de Gobernador del Estado Libre Asociado de Puerto Rico en la elección general precedente. Artículos 1.003 y 3.001 de la Ley Electoral, 16 L.P.R.A. § 3003(41) y 3101(3), respectivamente; Sección 1.4 y 4.1 del Reglamento para la Inscripción de Partidos por Petición de la Comisión Estatal de Elecciones.

Apenas tres días más tarde, en una reunión llevada a cabo el domingo 7 de noviembre de 2004, --y estando presentes los Comisionados de los tres partidos políticos principales-- la Comisión Estatal de Elecciones, en adelante la Comisión, acordó <u>unánimemente</u> aceptar la antes mencionada solicitud del P.I.P, autorizándole a que comenzara el correspondiente procedimiento de reinscripción. Dicha decisión fue certificada por el Secretario de la Comisión, Ramón M. Jiménez Fuentes, al día siguiente. De forma sucinta y sin expresar fundamento jurídico alguno en apoyo de dicha decisión, en la mencionada certificación se hizo constar el referido acuerdo. Además, se hizo mención a que, de conformidad con el Artículo 3.033 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. § 3124a, el P.I.P. mantenía todos los derechos y prerrogativas sobre su nombre y emblema durante un año a partir de la fecha de las elecciones generales.

El 8 de noviembre de 2004, la agrupación de ciudadanos conocida como Puertorriqueños por Puerto Rico, en adelante P.P.R., solicitó a la Comisión que le autorizara a comenzar su proceso de inscripción como partido por petición a nivel Isla. De otra parte, ese mismo día y sin tener conocimiento de que se había concedido ya la petición del P.I.P., la agrupación de ciudadanos conocida como el Partido Acción Civil, en adelante el P.A.C., --quien también tenía intenciones de inscribirse como partido por petición a nivel Isla-- a través de su Presidente, el Lcdo. Nelson Rosario

Rodríguez, presentó ante la Comisión un escrito titulado "Solicitud de Acuerdo con el Artículo 1.007 de la Ley Electoral" oponiéndose a la reinscripción del P.I.P. En dicho escrito argumentó, en síntesis, que debía denegarse la petición del P.I.P. debido a que dicha colectividad política no podía inscribirse antes del 31 de diciembre de 2004, ello en vista de que la Sección 8.3 del Reglamento para la Inscripción de Partidos por Petición aprobado por la Comisión establecía que no se aceptarían "solicitudes para la inscripción de partidos desde el 1 de junio hasta el 31 de diciembre del año en que se celebren las elecciones generales".

El P.A.C. alegó, además, que la petición del P.I.P. era prematura debido a que era necesario que, antes de comenzar su proceso de inscripción, fuera privado oficialmente de su certificación como partido principal, hiciera un inventario de sus bienes y cumpliera con lo dispuesto en el Artículo 3.026 de la Ley Electoral, 16 L.P.R.A. § 3118[3]; ello con el propósito de que no pudiera tener ventajas indebidas sobre las otras agrupaciones que, también, deseaban convertirse en partidos por petición, ni pudiera utilizar recursos públicos y la estructura de beneficios electorales de un partido

---

[3] El referido Artículo 3.026, ante, establece en lo aquí pertinente que: "En caso de desaparecer un partido político, cualquier equipo o propiedad adquirida con dinero proveniente del Fondo Electoral deberá ser devuelto a la Comisión Electoral, por el Presidente incumbente al momento de la desaparición del partido en cuestión".

inscrito para el fin privado de inscribirse y recoger firmas.

Luego de enterarse por la prensa del País de la determinación de la Comisión, el 10 de noviembre de 2004 el P.A.C. le envió una carta a la Comisión solicitando que se considerara su escrito como una solicitud de reconsideración, añadiendo a lo argumentado que, para esa fecha, aún no existía la certeza de cuál era el cinco por ciento (5%) de los votos obtenidos para el cargo de Gobernador o el tres por ciento (3%) total de votos íntegros razón por la cual no se sabía exactamente cuál era la cantidad de votos que debía obtener el P.I.P. para poder quedar inscrito. Informó, además, que comenzaría su proceso de inscripción después del 31 de diciembre de 2004.

El 12 de noviembre de 2004, el P.A.C. y P.P.R., --ambos representados por el licenciado Rosario Rodríguez-- radicaron ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una demanda sobre violación a sus derechos civiles, sentencia declaratoria e interdicto preliminar y permanente contra el P.I.P., la Comisión, su Presidente, el Hon. Aurelio Gracia Morales y todos los Comisionados Electorales; a saber, el Lcdo. Juan Dalmau Ramírez, el Lcdo. Thomas Rivera Schatz y el Lcdo. Gerardo Cruz Maldonado.[4] En la demanda reiteraron, en síntesis, los planteamientos esbozados en la "Solicitud de Acuerdo con el

---

[4] Dicho caso tenía el número KPE04-3481(904) en el tribunal de instancia.

Artículo 1.007 de la Ley Electoral" presentada por el P.A.C. ante la Comisión.

En dicha demanda, los demandantes solicitaron que el foro primario dejara sin efecto la determinación de la Comisión autorizando que el P.I.P. pudiera comenzar el proceso de recolección de firmas; que certificara que el P.I.P. ya no era un partido principal; que ordenara al P.I.P. a realizar un inventario, cumpliendo con lo dispuesto en el Artículo 3.026 de la Ley Electoral, ante; que tomara las medidas necesarias en equidad para que el P.I.P. no pudiera utilizar recursos públicos para su inscripción; y que ordenara la cesión de funciones del Comisionado Electoral del P.I.P. y demás funcionarios asignados a su oficina para que no estuvieran en la estructura de la Comisión adelantado la inscripción del P.I.P.[5]

Inicialmente, el 16 de diciembre de 2004, el foro primario, luego de celebrada una vista, desestimó sin perjuicio la referida demanda debido a que, habiendo el P.A.C impugnado la reinscripción del P.I.P. ante la Comisión, lo prudente era que se agotaran los remedios administrativos, y se esperara a la decisión de la Comisión antes de acudirse al tribunal.

La Comisión le envió, vía facsímil, dos cartas al P.A.C. con fecha 12 de noviembre de 2004. En la primera le informó que, atendido su escrito de 8 de noviembre de 2004,

---

[5] Ese mismo día, la Comisión autorizó a P.P.R. a comenzar con los procedimientos para quedar inscrito como partido por petición.

la Comisión había acordado notificarle oficialmente su decisión de 7 de noviembre de 2004 sobre la solicitud del P.I.P., incluyendo con dicha comunicación una copia de la mencionada certificación. Por otra parte, en la segunda carta la Comisión le notificó que se daba por recibida su comunicación de 10 de noviembre de 2004 pero que, toda vez, que habría de celebrarse una vista judicial no tenía nada que proveer al respecto. Posteriormente, el 18 de noviembre de 2004 la Comisión le envió otra carta al P.A.C. enmendando su última misiva, donde le notificó que en vista de que había una solicitud ante el tribunal de instancia se reiteraba en la decisión tomada con respecto al asunto planteado.

El P.A.C. y P.P.R. presentaron una moción de reconsideración ante el tribunal de instancia. En virtud de dicha solicitud, el 24 de noviembre de 2004 el foro primario celebró una vista para dilucidar la procedencia de la misma. Escuchados los argumentos de las partes, y en corte abierta, el tribunal de instancia ordenó la reapertura del caso únicamente en cuanto a las alegaciones de utilización ilegal de fondos  públicos y al trato desigual electoral, toda vez que determinó que las demás alegaciones serían atendidas en el recurso de revisión electoral. Cónsono con ello, declaró sin lugar una petición de los demandantes solicitando la consolidación de dicho caso con el recurso de revisión electoral. Así pues, quedaron fragmentadas las controversias entre ambos pleitos.

El 2 de diciembre de 2004 el tribunal de instancia emitió resolución plasmando por escrito la antes mencionada determinación. De entrada, destacó que el caso, únicamente, se reabrió para dilucidar las reclamaciones de uso ilegal de fondos públicos e invocación al derecho de igualdad electoral. Específicamente, con respecto a las alegaciones de igualdad electoral, determinó que el P.A.C., a diferencia del P.P.R., estaba impedido de exigir el mismo trato que el P.I.P., debido a que nunca presentó una solicitud para su inscripción como partido por petición por lo cual no estaba en la misma situación. De otra parte, resolvió que el P.P.R. había establecido que no se les estaba garantizando su derecho constitucional a la igualdad electoral. Conforme a ello, el foro primario emitió un interdicto preliminar ordenando al P.I.P. a "[c]esar y desistir de usar los equipos tecnológicos comprados o arrendados con el subsidio del Fondo Electoral, en el proceso para su reinscripción, excepto los ordenadores, los que podrán ser utilizados para la verificación de las peticiones de endoso en el horario de 8:30 a.m. a 5:00 p.m." y a "[a]bstenerse de utilizar el subsidio del Fondo Electoral para pagar deudas del procedimiento de re-inscripción." Además, ordenó a la Comisión a presentar un plan para salvaguardar el derecho constitucional de la igualdad electoral del P.P.R.[6]

---

[6] Es preciso señalar que la Comisión nunca presentó dicho plan.

El 22 de noviembre de 2004 el P.A.C. y el P.P.R. presentaron un recurso de revisión electoral ante el Tribunal de Primera Instancia, Sala Superior de San Juan, solicitando la revocación de la determinación de la Comisión autorizando la reinscripción del P.I.P., haciendo las mismas alegaciones presentadas en el pleito anteriormente incoado ante el foro primario.[7] Luego de varios trámites e incidentes procesales[8], se celebró una <u>vista</u> en el caso el 9 de diciembre de 2004. Durante la referida vista, <u>las partes presentaron su prueba</u> con respecto a la procedencia del recurso de revisión y la interpretación del Reglamento para la Inscripción de Partidos por Petición, <u>quedando reducida la controversia a si la certificación de la Comisión violaba la Sección 8.3 del Reglamento para la Inscripción de Partidos por Petición.</u>[9]

---

[7] Así las cosas, el P.I.P. y su Comisionado Electoral presentaron una moción de desestimación ante el foro de instancia alegando, en síntesis, que no eran partes apropiadas en un recurso dirigido contra la Comisión que fue la agencia que emitió el dictamen; que el P.A.C. carecía de legitimación activa para reclamar derechos debido a que no le había solicitado a la Comisión que le autorizara a comenzar su procedimiento de inscripción como lo había hecho el P.I.P.; que procedía desestimar el recurso con respecto a P.P.R. toda vez que había obtenido lo mismo que se impugnaba en el recurso: y que el caso constituía cosa juzgada por lo resuelto en el pleito del remedio interdictal y la sentencia declaratoria.

[8] Acompañaron dicho recurso con una solicitud de interdicto provisional en auxilio de jurisdicción del tribunal. Dicho caso tenía el número KPE04-3623(907) en el foro primario.

[9] Durante dicha vista se dilucidó, además, la antes mencionada moción de desestimación y otra moción presentada por el P.I.P. y su Comisionado solicitando la descalificación del Lcdo. Rosario Rodríguez debido a la

Posteriormente, el 28 de diciembre de 2004, el tribunal de instancia emitió sentencia confirmando el dictamen de la Comisión por entender que dicha entidad había interpretado válidamente su Reglamento a la luz de la Ley Electoral.[10] Específicamente, resolvió que --aun cuando una lectura de la mencionada Sección 8.3 sugería que la Comisión no debía aceptar ninguna petición de inscripción en el período allí contemplado y que, por tanto, la certificación aquí en cuestión contravino dicho Reglamento-- fue la misma Comisión que aprobó el Reglamento la que emitió la certificación, luego de haber interpretado el referido Reglamento a la luz de la Ley Electoral de Puerto Rico, ante. A tales efectos, y en un escolio, el tribunal de instancia destacó que, a su juicio y conforme al Artículo 1.005 de la ley Electoral, 16 L.P.R.A. § 3013(L), lo que ocurrió fue una enmienda o

---

existencia de un alegado conflicto de interés al dicho abogado representar tanto al P.A.C. como a P.P.R., quien también había obtenido que la Comisión le autorizara a comenzar su proceso de inscripción antes de que se terminara el año eleccionario. Para subsanar dicho conflicto, en la referida vista P.P.R. desistió de su reclamación en el recurso de revisión electoral.

[10] De entrada declaró sin lugar la moción de desestimación debido a que aun cuando el P.I.P. y su Comisionado Electoral no eran partes indispensables sí eran necesarias; el P.A.C. tenía legitimación activa porque fue opositor en el proceso de inscripción del P.I.P., teniendo derecho a recurrir al tribunal para impugnar la decisión de la Comisión; y no existía cosa juzgada debido a que en el otro pleito ante el tribunal de instancia no se hizo determinación alguna con relación a la validez de la certificación de la Comisión a la luz de la sección 8.3 del Reglamento para la Inscripción de Partidos por Petición.

modificación al Reglamento para lo cual se requería el consentimiento unánime de los comisionados electorales.[11]

El foro de instancia determinó, además, que el Reglamento para la Inscripción de Partidos por Petición incluía una disposición casi idéntica a lo dispuesto en la Ley Electoral donde se establecía, de igual forma, el 1 de junio del año electoral como fecha límite para poder presentar una solicitud de inscripción como partido por petición. El referido foro señaló que era evidente que se impusiera dicho límite, antes de que se llevaran a cabo las elecciones generales, más sin embargo resolvió que no

---

[11] Dicho Artículo 1.005 de la Ley Electoral, ante, dispone en lo relevante a la controversia ante este Tribunal que:

La Comisión Estatal de Elecciones será responsable de planificar, organizar, estructurar, dirigir y supervisar el organismo electoral y todos los procedimientos de naturaleza electoral que, conforme este subtítulo y sus reglamentos, rijan en cualquier elección a celebrarse en Puerto Rico. En el desempeño de tal función, tendrá, en adición, a cualesquiera otros dispuestos en este subtítulo, los siguientes deberes:
…
(l) Aprobar y adoptar las reglas y reglamentos que fueren necesarios para implantar las disposiciones de este subtítulo bajo su jurisdicción, los cuales tendrán vigencia, previa notificación al Gobernador y a la Asamblea Legislativa de Puerto Rico mediante publicación al efecto en dos (2) periódicos de circulación general, dos (2) veces en un lapso de dos (2) semanas, sin que sea necesario el cumplimiento de las disposiciones de las secs. 2101 et seq. del Título 3, conocidas como "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico".

Cualquier enmienda o modificación a los reglamentos aprobados por la Comisión requerirá el voto unánime de los Comisionados Electorales. …

parecía existir propósito legítimo alguno detrás de limitar el derecho a solicitar la inscripción de un partido entre la celebración de unas elecciones y el fin del año.

En consecuencia, el tribunal de instancia concluyó que la Comisión --al aplicar la Sección 8.3 del Reglamento para la Inscripción de partidos por Petición, autorizando la inscripción del P.I.P. antes de terminar el año electoral-- había hecho una interpretación flexible y cónsona con el derecho que según la Ley Electoral tienen los electores de participar en los procesos de inscripción de partidos políticos. Por último, indicó que los tribunales debían brindar deferencia a las interpretaciones que las agencias administrativas efectuaban con relación a la ley cuya ejecución les fue encomendada por la legislatura, ya que en esos casos se presume que la agencia tiene un conocimiento especializado sobre aquellos asuntos que le fueron encomendados.

Ese mismo día, --culminado su proceso de recolección de endosos y habiendo cumplido el P.I.P. con todos los requisitos legales para quedar inscrito-- la Comisión lo certificó como partido por petición. En virtud de lo anterior, el P.A.C. y P.P.R. presentaron un segundo recurso de revisión ante el Tribunal de Primera Instancia, Sala Superior de San Juan, caso Civil Número KPE05-0049(904).

Dicho recurso fue consolidado con el pleito de interdicto preliminar y sentencia declaratoria.[12]

Inconforme y luego de haber presentado una moción de reconsideración ante el foro de instancia, la cual fue denegada el 20 de enero de 2005, el P.A.C. recurrió mediante *certiorari* ante el Tribunal de Apelaciones. Alegó en síntesis que erró el foro primario: al no haber ordenado que el P.I.P. comenzara su inscripción luego de cumplir con lo dispuesto en el Artículo 3.026 de la Ley Electoral, ante, permitiendo, de esta forma, que se violara su derecho a la

---

[12] Es preciso señalar que el 28 de marzo de 2005, el P.A.C. y P.P.R. presentaron una moción en los casos consolidados en cumplimiento con una orden del tribunal de instancia de que se expresara con respecto a una moción del P.I.P. solicitando se desestimara con perjuicio dicho pleito. En el mismo los demandantes hicieron constar lo siguiente:

> "Recordará el Honorable Tribunal que se reconsideró y se reabrió el caso KPE-04-3481 sólo a los fines de atender los asuntos relacionados a la violación a la igual protección de las leyes y al mal uso de fondos públicos para fines privados. Por otro lado, en la solicitud de revisión KPE-04-3623 se alega que se equivocó la Comisión estatal de Elecciones (Comisión) al no aplicar al P.I.P. la sección 8.3 del Reglamento de Inscripción de Partidos por Petición.
>
> Surge de la sentencia del 28 de diciembre de 2004, dictada en la solicitud de revisión, KPE-04-3623, que dicha sentencia sólo resolvió la controversia de si hubo violación o no por parte de la Comisión a la sección 8.3 del Reglamento. En esa sentencia no se examinó la controversia en cuanto al uso de fondos públicos ni la violación a la igual protección de las leyes.
>
> Recordará además el Honorable Tribunal que se solicitó la consolidación de la solicitud de revisión KPE-04-3623 con el pleito KPE-04-3481. este Honorable Tribunal no consolidó esos pleitos." (Énfasis nuestro).

igual protección de las leyes y que el P.I.P. utilizara fondos públicos para su reinscripción; al presumir la corrección de la decisión de derecho de la Comisión de no aplicar al P.I.P. lo dispuesto en la Sección 8.3 del Reglamento para la Inscripción de Partidos por Petición; y al concluir que la Comisión interpretó válidamente el referido Reglamento al autorizar la inscripción del P.I.P. contrario al texto de la referida sección 8.3.

Luego de varios trámites e incidentes procesales, el foro apelativo intermedio emitió sentencia confirmatoria de la emitida por el tribunal de instancia. Primeramente, el foro apelativo determinó, en lo aquí pertinente, que las alegaciones del P.A.C. en torno a la igual protección de las leyes y el trato desigual no estaban maduras para ser adjudicadas por dicho foro en ese momento, toda vez que la sentencia recurrida del tribunal de instancia se circunscribió a resolver la validez de la certificación emitida por la Comisión el 8 de noviembre de 2004, por lo cual su función revisora se limitaba a lo allí dictaminado. De otra parte, estableció que aun cuando la Ley Electoral ordena la celebración de un juicio de novo ante el Tribunal de Primera Instancia en el proceso de revisión judicial de la decisión de la Comisión, los tribunales tenían que prestar deferencia a las interpretaciones de ley que haga dicha Comisión por lo cual procedía aplicar las normas generales del Derecho Administrativo. De este modo, resolvió que el foro primario aplicó correctamente la normativa

vigente al determinar que la decisión de la Comisión era cónsona con la Ley Electoral, analizando las disposiciones del Reglamento para la Inscripción de Partidos por Petición a base de lo dispuesto en dicha pieza legislativa. Finalmente, estableció que coincidía con el foro primario en el hecho de que no encontraba razonable ni que tuviera propósito legítimo alguno que se impusiera un límite a la inscripción de partidos luego de celebrada una elección general. Conforme a ello, concluyó que la prohibición dispuesta en la Sección 8.3 del Reglamento para la Inscripción de Partidos por Petición, al contener un límite en fechas para que un partido pudiera solicitar su inscripción, coartaba los derechos de los electores a participar en la inscripción de ese partido luego de haberse celebrado el evento electoral. Siendo ello así, el referido foro estableció que, por estar en contravención con los derechos de inscripción de partidos políticos reconocidos en la Ley Electoral, la Comisión no estaba obligada a seguir lo dispuesto en su propio Reglamento.

Aun insatisfecho, el P.A.C. acudió --vía *certiorari*-- ante este Tribunal alegando, en síntesis, que incidió el foro de instancia al:

> ... concederle deferencia a una determinación de la CEE que no tiene determinaciones de hechos ni de derecho y que se llevó a cabo en violación [de] su propia ley orgánica.
> ... al no concluir que la determinación de la CEE fue arbitraria y caprichosa.
> ... al permitir que el P.I.P. se inscribiese utilizando recursos públicos.

Expedimos el recurso. Contando con la comparecencia de ambas partes, y estando en condiciones de resolver el mismo, procedemos a así hacerlo.

I

En su primer señalamiento de error, el P.A.C. indica que erró el Tribunal de Apelaciones al concederle deferencia a una determinación de la C.E.E. que no contiene determinaciones de hechos ni de derecho y que fue acordada en violación de su propia ley orgánica; ello por entender que conforme el Artículo 1.016 de la Ley Electoral, 16 L.P.R.A. § 3016a, no podía utilizarse el criterio de deferencia a la decisión de la Comisión, utilizado generalmente en los casos administrativos, sino que debía efectuarse un juicio de novo.

El procedimiento de la revisión de las decisiones de la Comisión está regulado por las disposiciones del Artículo 1.016 de la Ley Electoral, 16 L.P.R.A. § 3016(a). A tales efectos, el referido Artículo 1.016, ante, establece, en lo aquí pertinente que:

> Cualquier parte afectada por una resolución, determinación y orden de la Comisión Estatal podrá dentro de los diez (10) días siguientes a la notificación de la misma recurrir ante el Tribunal de Primera Instancia mediante la radicación de un escrito de revisión. La parte promovente tendrá la responsabilidad de notificar copia del escrito de revisión a la Comisión Estatal y a cualquier parte afectada.
>
> El Tribunal de Primera Instancia celebrará una vista en su fondo, recibirá evidencia y formulará

las determinaciones de hecho y conclusiones de derecho que correspondan. El Tribunal deberá resolver dicha revisión dentro de un término no mayor de veinte (20) días, contados a partir de la fecha de sometida la misma.

Surge de la referida disposición estatutaria que la Asamblea Legislativa estableció que la revisión de las decisiones de la Comisión sería mediante un juicio de novo. Véase: Miranda v. C.E.E., 141 D.P.R. 775, 784 (1996) citando a P.N.P. v. Rodríguez Estrada, Pres. C.E.E., 123 D.P.R. 1, 30-31 (1988); véase, además, López Rosas v, Comisión Estatal de Elecciones, res. el 30 de marzo de 2004, 2004 T.S.P.R. 47; Demetrio Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. ed., Colombia, Forum, 2001, pág. 582.

En cuanto a los fundamentos que tuvo la Legislatura para aplicar un criterio de revisión más riguroso a las determinaciones de la Comisión Estatal de Elecciones que el que usualmente se utiliza para la revisión de las agencias administrativas, este Tribunal ha señalado que ello lo exige y propicia "[t]anto la dinámica organizacional de la Comisión Estatal --controlada por los partidos políticos-- como la forma particular en que se toman allí las decisiones". Granados v. Rodríguez Estrada I, 124 D.P.R. 1, 19 (1989). Así pues, hemos establecido que toda vez que "[l]as decisiones de la Comisión Estatal están sujetas a las presiones e intereses partidistas" se justifica que en el

escrutinio de las decisiones que emite la Comisión la revisión judicial sea más abarcadora. *Ibid*.

Conforme a lo anterior, al evaluar una decisión de la Comisión Estatal de Elecciones el tribunal de instancia no está limitado por el expediente de la agencia, sino que puede recibir "cualquier prueba que presenten las partes a su favor, independientemente de que no haya sido presentada a la agencia administrativa, y evaluarla según su propio criterio sin necesidad de conferirse deferencia a la decisión administrativa". Román Ruiz v. E.L.A., 150 D.P.R. 639, 647 (2000): véase, además, Granados v. Rodríguez Estrada I, ante, a la pág. 19: P.N.P. v. Rodríguez Estrada, Pres. C.E.E., ante, a la pág. 31. De este modo, el foro primario tiene la obligación "de celebrar una vista en su fondo, recibir evidencia y hacer sus propias determinaciones de hecho y conclusiones de derecho al revisar las decisiones" de la Comisión. Granados Navedo v. Rodríguez Estrada, ante, a las págs. 22-23; P.N.P. v. Rodríguez Estrada, Pres. C.E.E., ante, a las págs. 30-31 (1988); véase, además, Demetrio Fernández Quiñónez, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, pág. 582.

Vale la pena señalar, como correctamente concluyó el Tribunal de Apelaciones, que hemos establecido que el tribunal de instancia debe, en aquellos casos en que la determinación de la Comisión dependa principal o exclusivamente de una cuestión de derecho electoral

especializado, guardar la usual deferencia al mencionado organismo administrativo. Granados v. Rodríguez Estrada I, ante, a las págs. 20-21.

Independientemente de lo antes expresado y de si a la luz de dichos hechos, la decisión de la Comisión debía, o no, ser objeto de deferencia de parte del foro judicial, el error no fue cometido; ello en vista de que el foro de instancia --aun cuando al final de su sentencia mencionó que las decisiones de las agencias se presumen correctas y merecen la deferencia de los tribunales-- confirmó la decisión de la Comisión luego de, efectivamente, haber celebrado una vista, recibido prueba y haber escuchado los planteamientos de las partes; esto es, el tribunal de instancia llegó a su determinación luego de hacer su propio análisis e interpretación del Reglamento para la Inscripción de Partidos por Petición y la Ley Electoral. Conforme a lo anterior, resulta evidente que aun cuando el foro primario mencionó que se presumían válidas las decisiones administrativas, dicho foro cumplió con la obligación impuesta por el Artículo 1.016, ante.

II

El segundo señalamiento de error del peticionario se reduce a que determinemos la validez, propiamente, de la decisión de la Comisión de autorizar la solicitud del P.I.P. de comenzar su proceso de inscripción antes que terminara el año eleccionario en el 2004.

Como es sabido, "[e]n el Preámbulo de nuestra Constitución se recalca la importancia de la democracia para la vida de la comunidad puertorriqueña y lo fundamental del voto para la existencia de esa democracia." Ortiz Angleró v. Barreto Pérez, 110 D.P.R. 84, 92 (1980). Cónsono con lo anterior, este Tribunal ha enfatizado que el derecho al voto es fundamental y "[u]no de los derechos más preciados de nuestra ciudadanía", siendo un "pilar de nuestro sistema democrático". Granado v. Rodríguez Estrada I, ante, a la pág.6; véanse, además, P.A.C. v. E.L.A., 150 D.P.R. 359, 387; P.P.D. v. Planadeball Poggy, 121 D.P.R. 570 (1988); García v. Luciano, 115 D.P.R. 628 (1984); P.P.D. V. Barreto Pérez, 111 D.P.R. 199 (1981).

En específico, la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho al sufragio universal estableciendo que "[l]as leyes garantizarán la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral". Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1; Granados v. Rodríguez Estrada I, ante.

Con respecto a dicho derecho, hemos establecido que en su dimensión de participación política, éste "comprende el derecho a formar agrupaciones para participar en el proceso electoral". P.A.C. v. E.L.A., 150 D.P.R. 359, 372 (2000); Giménez v. J.E.E., 96 D.P.R. 943 (1968). De este modo, este Tribunal ha señalado que "[e]n nuestro esquema de derecho

constitucional, el derecho al voto no tan sólo comprende el derecho a votar en las elecciones, sino que abarca el derecho a que se incluyan en las papeletas las opciones que reflejan las corrientes políticas contemporáneas del elector". P.A.C. v. E.L.A., 150 D.P.R. 359, 372 (2000), citando a Ortiz Angleró v. Barreto Pérez, ante.

Ello es así, toda vez que los partidos son vehículos de la voluntad electoral y --estando investidos de poderes cuasi-gubernamentales-- son elementos básicos e indispensables de toda democracia a través de los cuales se canalizan pacíficamente las distintas tendencias políticas y económicas de la sociedad en un momento dado. Véase: Granados v. Rodríguez Estrada I, ante, esc. 12; P.A.C. v. E.L.A., ante; P.A.C. v. C.E.E., 149 D.P.R. 244, 254-255 (1999); P.S.P. v. Com. Estatal de Elecciones, 110 D.P.R. 400, 406 (1987); P.P.D. v. Gobernador I, 139 D.P.R. 643, 668-669 (1995); P.R.P. v. E.L.A., 115 D.P.R. 631, (1984); García Passalacqua v. Tribunal Electoral, 105 D.P.R. 49 (1976).

Ahora bien, no obstante la importancia del derecho al voto y al de formar agrupaciones políticas, éstos no son absolutos ni "tiene[n] credenciales de inimpugnabilidad" teniendo la Asamblea Legislativa "facultad de regular el ejercicio de ese derecho y todo lo concerniente al proceso electoral". P.N.P. v. Rodríguez Estrada, ante, a la pág. 30; véanse, además, P.A.C. v. E.L.A., ante, a la pág. 372 (2000); P.S.P. v. Com. Estatal de Elecciones, 110 D.P.R. 400

(1980). Ello lo preceptúa nuestra Constitución al establecer que "[s]e dispondrá por ley todo lo concerniente al proceso electoral y de la inscripción de electores, así como lo relativo a los partidos políticos y candidaturas". Art. IV, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1; P.R.P. v. E.L.A., 115 D.P.R. 631, (1984): P.N.P. v. Tribunal Electoral, 104 D.P.R. 741, 749-750 (1976); P.S.P., P.P.D., P.I.P. v. Romero Barceló, 110 D.P.R. 248, 255 (1980).

Conforme a dicho mandato constitucional, este Tribunal ha reiterado que la Asamblea Legislativa tiene una amplia facultad y un amplio margen de autoridad para legislar en asuntos de materia electoral y regular el proceso electoral. P.S.P. v. Com. Estatal de Elecciones, ante, a la pág. 405; véase, además, Ramírez de Ferrer v. Mari Brás, 144 D.P.R. 141 (1997); P.P.D. V. Barreto Pérez, ante; P.I.P. v. Romero Barceló, ante; P.N.P. v. Tribunal Electoral, ante. Véase, además, Raúl Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, Vol. II, Colegio de Abogados de Puerto Rico, Instituto de Educación Práctica, Inc. 1988, a las págs. 1205-1206. Específicamente, y dentro de la aludida facultad de la Legislatura, hemos reconocido como lícita y apremiante "toda reglamentación que, sin obstaculizar innecesariamente el voto, propenda a la realización de un proceso electoral justo, ordenado, libre de fraude, honesto e íntegro". P.S.P. v. Com. Estatal de Elecciones, ante, a las págs. 405-406; véanse, además, P.A.C. v. E.L.A., ante; P.S.P., P.P.D. y P.I.P. v. Romero

Barceló, 110 D.P.R. 248 (1980); García Passalacqua v. Tribunal Electoral, 105 D.P.R. 49 esc. 9 (1976); P.N.P. v. Tribunal Electoral, 104 D.P.R. 741 (1976).

En virtud de la referida delegación constitucional, la Asamblea Legislativa aprobó la Ley Electoral de Puerto Rico, ante, a través de la cual estableció, entre otras cosas, los requisitos, detalles, trámites y formalidades requeridos para la inscripción de partidos políticos. Primeramente y conforme a nuestro ordenamiento constitucional, el antes mencionado estatuto reconoció --a los efectos de garantizar el libre ejercicio de la franquicia electoral y lograr la más clara expresión de la voluntad del pueblo-- el derecho del elector a participar en la inscripción de partidos y en la inscripción de candidaturas independientes. Artículo 2.001 de la Ley Electoral, 16 L.P.R.A. § 3051(4). Conforme a lo anterior, se estableció y definió en dicho estatuto lo que significaba ser un partido político. A tales efectos, dicha Ley definió partido político en general como partido principal, partido por petición, partido local por petición y partido coligado. Art. 1.003 de la Ley Electoral, 16 L.P.R.A. sec. 3003(38).

Específicamente, esta definición "nos remite, a su vez, a las definiciones particulares que la Ley Electoral provee de las distintas formas en que estatutariamente puede quedar constituido un partido. Guadalupe Tirado v. Comisión Estatal de Elecciones, res. el 28 de junio de 2005, 2005 T.S.P.R.

91. En lo aquí pertinente, en dicho estatuto se define de forma general "partido por petición" como:

> "cualquier agrupación de ciudadanos que, con el propósito de figurar en las papeletas electorales de unas elecciones generales, se inscriba como partido político en la Comisión Estatal de Elecciones mediante la radicación de peticiones juradas al efecto, suscritas por un número de electores no menor del cinco (5) por ciento del total de votos depositados para todos los candidatos al cargo de Gobernador del Estado Libre Asociado de Puerto Rico en la elección general precedente". Artículo 1.003 de la Ley Electoral, 16 L.P.R.A. § 3003(41).

Es de notar que en la referida definición general de lo que es un "partido por petición" no se establece límite alguno de fecha con respecto a cuándo deben presentarse las solicitudes para la inscripción de un partido durante un año electoral.

No obstante lo anterior, en otra disposición de la Ley, además de mencionarse lo establecido en la antes mencionada definición, la Legislatura estableció expresamente que las solicitudes para inscribir un partido por petición tenían que ser presentadas en o antes del 1ro de junio del año eleccionario. A tales efectos, dicho estatuto dispone que:

> Se considerará como "Partido por Petición" a cualquier agrupación de ciudadanos que, con el propósito de figurar en la papeleta electoral de unas elecciones generales, en o antes del primero de junio del año de elecciones se inscriba como partido político, mediante la radicación ante la Comisión de peticiones juradas al efecto, ante notarios públicos admitidos al ejercicio de la notaría, a tenor con lo dispuesto por la Ley Notarial vigente, quienes percibirán de la Comisión Electoral un dólar por cada petición

notarizada válida como honorarios suscritas por un número de electores no menor del cinco (5) por ciento del total de votos depositados para todos los candidatos al cargo de Gobernador en la elección general precedente. Debiéndose presentar, además, un programa de gobierno o plataforma política, así como los nombres y direcciones de un grupo de electores que constituyan su organismo directivo central. Artículo 3.001 de la Ley Electoral, 16 L.P.R.A. § 3101.

De otra parte, a través de dicha pieza legislativa, la Legislatura creó la Comisión Estatal de Elecciones. Artículo 1.004 de la Ley Electoral, 16 L.P.R.A. § 30004. Con respecto a dicho organismo, hemos señalado que su "estructura básica administrativa y decisional responde a un sistema electoral político contencioso en que se detectan tres notas sobresalientes: (1) impone a los partidos políticos la responsabilidad de estructurar e inspeccionar todos los procedimientos de naturaleza electoral a regir en los procesos eleccionarios; (2) que la formulación e implementación de ese mandato se logren mediante el consenso unánime de los partidos; y (3) que de ese proceso se ejerza la mutua fiscalización partidista. Granados v. Rodríguez Estrada I, 124 D.P.R. 1 (1989), citando a P.S.P. v. Com. Estatal de Elecciones, 110 D.P.R. 400, 406-407 (1980). Así pues, la legislatura facultó a la Comisión para que estableciera los reglamentos necesarios para la inscripción de partidos.

En cumplimiento con dicha encomienda, el 23 de enero de 2002, la Comisión --con el consentimiento de todos los Comisionados Electorales-- aprobó el Reglamento para la

Inscripción de Partidos por Petición con el propósito de estructurar el proceso de inscripción de los partidos por petición y partidos locales por petición.[13] En dicho Reglamento se adoptó por referencia la antes mencionada definición de partido por petición establecida en la Ley Electoral. Sección 1.3 del Reglamento para la Inscripción de Partidos por Petición. El mencionado Reglamento, además de establecer requisitos para la inscripción de partidos por petición, establece, en la Sección 8.3, que la Comisión no aceptará solicitudes para la inscripción de nuevos partidos desde el 1ro. de junio hasta el 31 de diciembre del año en que se celebren elecciones generales. Ciertamente, dicha disposición reglamentaria lo que en última instancia hace, es establecer un período específico de tiempo --con comienzo y final-- durante el cual no se pueden radicar las solicitudes de partido por inscripción.

Siendo ello así, --y habiendo el P.I.P. radicado su solicitud para inscribir el partido dentro del período de tiempo que contempla, y prohíbe, la antes mencionada Sección 8.3 del Reglamento de la Comisión-- debemos resolver si la actuación de la Comisión, con el voto unánime de los Comisionados Electorales, aprobando la referida solicitud de inscripción es una válida en derecho.

---

[13] En ese momento los Comisionados Electorales eran los mismos que participaron en la decisión que se impugna en el presente caso excepto la Comisionada Electoral del P.I.P. que en ese momento era Damaris Mangual Vélez.

Como recordaremos, tanto el tribunal de instancia como el tribunal apelativo intermedio fueron, en síntesis, del criterio que la actuación de la Comisión había sido una válida en derecho ya que: no obstante la Sección 8.3 establecer un período de veda para la inscripción de partidos por petición, la referida prohibición no era razonable ni tenía propósito legítimo alguno; la misma coartaba los derechos de los electores a participar en la inscripción de partidos; y que la actuación unánime de los Comisionados, aprobando la solicitud del P.I.P. había tenido el efecto de enmendar el Reglamento.

III

Sabido es que las decisiones de la Comisión --foro administrativo que tiene una organización política-- deben fundarse en la vigencia plena del Estado de Derecho y en la protección de los derechos políticos y sociales que entran en juego en la administración de la Ley Electoral, y no en preferencias políticas. Véase: Granados v. Rodríguez Estrada I, 124 D.P.R. 1 (1989), citando a P.N.P. v. J.E.E., 96 D.P.R. 961, 962-963 (1968). Los acuerdos de la Comisión tienen que ser conforme a la ley y la Constitución, es decir están limitados por éstas. P.N.P. y P.I.P. v. Rodríguez Estrada, 122 D.P.R. 490, 515-516 (1988).

Debe enfatizarse, por otro lado, que "[p]or su naturaleza, a la Comisión le aplican normas vigentes elementales en derecho administrativo, tales como que un

reglamento promulgado para implementar la ejecución de una ley puede complementarla, pero no estar en conflicto con ésta. Véase: *Ex Parte* Irizarry, 66 D.P.R. 672 (1946). Dicho de otra manera, un reglamento o actuación administrativa claramente en conflicto, o en contra de la ley, es nulo. Infante v. Tribunal Examinador Médicos, 84 D.P.R. 308 (1961); P.S.P. v. Com. Estatal de Elecciones, 110 D.P.R. 400, 409 (1987).

Ello así ya que, conforme expresáramos en Perfect Cleaning Services, Inc. v. Corporación del Centro Cardiovascular de P.R., res. el 16 de agosto de 2004, 2004 T.S.P.R. 138, "... es norma altamente conocida que la autoridad de una agencia administrativa para aprobar reglas o reglamentos surge directamente de su ley habilitadora ..." y que la misma descansa "... en la premisa de carácter absoluto de que el poder de aprobar reglas y reglamentos no puede trascender la autoridad delegada". (Énfasis suplido).

De otra parte, procede que enfaticemos lo resuelto en *Ex parte* Irizarry, ante, a los efectos de que el texto de una ley jamás debe entenderse modificado o suplantado por el reglamentario y que en cualquier conflicto entre el texto de la ley y su reglamento debe prevalecer el de la ley. Por último, resulta altamente pertinente a la controversia hoy ante nuestra consideración, lo expresado por este Tribunal en el citado caso de *Ex parte* Irizarry, ante, a los efectos de que el "... fin perseguido al delegar el poder de reglamentación no puede ser otro que el de implementar la

ejecución de la ley pero nunca puede ese poder ejercitarse en tal forma que sustituya al criterio del legislador por el de la junta ...". (Énfasis suplido).

Como hemos visto, la Legislatura estableció, en lo pertinente, que se "... considerará como 'Partido por Petición' a cualquier agrupación de ciudadanos que, con el propósito de figurar en la papeleta electoral de unas elecciones generales, en o antes del primero de junio del año de elecciones se inscriba como partido político, mediante la radicación ante la Comisión de peticiones juradas al efecto, ...". 16 L.P.R.A. sec. 3101(3).

El propósito detrás del requisito de la radicación de las peticiones en o antes del primero de junio del año en que se celebran las elecciones generales es obvio: la Comisión necesita tiempo para pasar juicio, y resolver, la solicitud radicada y para, de cumplir esa agrupación de ciudadanos con todos los requisitos exigidos, poder asegurarse que dicho partido por petición aparezca en las papeletas de votación correspondiente.

Es importante resaltar que la Legislatura no estableció una prohibición como la establecida por la Comisión mediante la Sección 8.3 de su Reglamento. Es claro, pues, que no medió intención legislativa alguna de limitar la presentación de solicitudes para la inscripción de nuevos partidos desde el 1 de junio hasta el 31 de diciembre del año en que se celebren elecciones generales, solicitudes que evidentemente procurarían la inscripción de partidos para

elecciones posteriores a las de ese año. La Legislatura sencillamente no lo hizo.

Somos del criterio que la Comisión no estaba facultada para exigir, o añadir, un requisito o limitación que el legislador no tuvo a bien establecer. Se excedió la Comisión en sus facultades al establecer, en la Sección 8.3 del Reglamento, que no aceptaría solicitudes para la inscripción de nuevos partidos desde el 1 de junio hasta el 21 de diciembre del año en que se celebren elecciones generales. Su acción es una *ultra vires*, que es contraria a la ley y, por tanto, nula. Véase: *Ex parte* Irizarry, ante; Perfect Cleaning Services, Inc. v. Corporación del Centro Cardiovascular de P.R., ante.

IV

Por último, en su tercer señalamiento de error, la peticionaria aduce que erró el Tribunal de Apelaciones al permitir que el P.I.P. se inscribiese con recursos públicos, concluyendo que la controversia del uso ilegal de fondos públicos y violación a la igual protección de las leyes no estaba madura por razón de que el foro primario, en el recurso de revisión, no abordó el asunto sino que se estaba litigando en el pleito del interdicto preliminar y sentencia declaratoria.

Con respecto a dicho señalamiento de error, basta con expresar que en el presente caso no existe controversia con respecto a que la peticionaria presentó dos recursos

distintos ante dos salas del tribunal de instancia que surgieron de la determinación de la Comisión; a saber, (1) un recurso de revisión administrativo, caso Civil Número KPE04-3623(907), que es el que tenemos ante nuestra consideración en este momento, y (2) una demanda solicitando un remedio interdictal y de sentencia declaratoria, caso Civil Número KPE04-3623(904).[14]

Al así actuar, se creó una dicotomía con respecto a las salas del foro primario que estaban atendiendo las alegaciones de la peticionaria, aun cuando todas tenían su origen en la resolución de la Comisión de autorizar la inscripción del P.I.P. De una parte, ante la sala del tribunal de instancia que tenía el presente recurso de revisión administrativa se estaba dilucidando exclusivamente la controversia con respecto a la validez de la certificación emitida por la Comisión conforme a la sección 8.3 del Reglamento para la Inscripción de Partidos por Petición. De otra parte, ante la sala del foro primario que está atendiendo el interdicto preliminar y la sentencia declaratoria, se están dilucidando las reclamaciones de utilización ilegal de fondos públicos por parte del P.I.P. y el trato desigual electoral.

Dicha fragmentación de controversias fue consecuencia directa de las actuaciones de la peticionaria y surge

---

[14] Como mencionamos anteriormente, dicho caso fue consolidado con el segundo recurso de revisión presentado por el P.A.C. y P.P.R. caso Civil Número KPE05-0049, cuando la Comisión certificó al P.I.P. como partido por petición.

claramente de dictámenes emitidos por ambas salas del foro primario. Particularmente, en la resolución del foro primario, atendiendo el interdicto preliminar, éste fue enfático al señalar que reabriría el caso únicamente con respecto a las alegaciones de utilización de fondos públicos y trato desigual electoral debido a que la determinación de la validez de la decisión de la Comisión se estaba dilucidando en el recurso de revisión administrativa. Por otra parte, el tribunal de instancia en el recurso de revisión administrativa estableció, expresamente, en su sentencia que sólo estaba resolviendo la controversia con respecto a la posible violación de la Comisión de la Sección 8.3 al aprobar el Reglamento para la Inscripción de Partidos por Petición.

Más aun, el presidente y representante legal del P.A.C., a través de una moción en cumplimiento de orden radicada ante la sala del foro primario ante la cual se encuentra el pleito del remedio interdictal, expresamente aceptó lo anterior al señalar, que "[r]ecordará el Honorable Tribunal que se reconsideró y se reabrió el caso KPE-04-3481 sólo a los fines de atender los asuntos relacionados a la violación a la igual protección de las leyes y al mal uso de fondos públicos para fines privados." Más adelante, agregó que: "[s]urge de la sentencia del 28 de diciembre de 2004, dictada en la solicitud de revisión, KPE-04-3623, que dicha sentencia sólo resolvió la controversia de si hubo violación o no por parte de la Comisión a la sección 8.3 del

Reglamento. En esa sentencia no se examinó la controversia en cuanto al uso de fondos públicos ni la violación a la igual protección de las leyes". Por último, indicó éste que "[r]ecordará además el Honorable Tribunal que se solicitó la consolidación de la solicitud de revisión KPE-04-3623 con el pleito KPE-04-3481. Este Honorable Tribunal no consolidó esos pleitos." (Énfasis nuestro).

En dicha moción se aceptó todo lo anterior para argumentar que no debía darse por desistido con perjuicio a P.P.R. de lo argumentado en el segundo recurso de revisión electoral toda vez que siendo las controversias presentadas en ambos recursos distintas, el P.P.R. sólo había desistido de sus reclamaciones en el recurso de revisión electoral aquí en cuestión.

Habiéndose fragmentado las controversias, el foro primario nunca tuvo ante sí las antes mencionadas alegaciones de utilización de fondos públicos y trato desigual en este recurso; únicamente pasó juicio sobre la validez del acuerdo unánime de la Comisión. Siendo ello así, el tribunal apelativo intermedio solamente podía revisar y resolver la controversia que fue debidamente planteada ante el tribunal de instancia de la cual se está revisando la determinación; es decir sólo podía revisar la validez de la autorización dada por la Comisión para que el P.I.P. comenzara su proceso de inscripción. Conforme a lo anterior, somos del criterio que no erró el Tribunal de Apelaciones al limitar su función revisora a la controversia con respecto a

la validez de la certificación emitida por la Comisión autorizando la inscripción del P.I.P. antes que finalizara el año eleccionario ello en vista de que el tribunal de instancia en el recurso de revisión no resolvió ni tuvo ante su consideración ninguna otra alegación.

V

Por los fundamentos antes expresados, procede confirmar la sentencia emitida por el Tribunal de Apelaciones el 30 de junio de 2005, en cuanto dicho foro validó la inscripción del Partido Independentista Puertorriqueño.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Partido Acción Civil

    Peticionario

      vs.

Partido Independentista          CC-2005-983     CERTIORARI
Puertorriqueño, Comisión Estatal
de Elecciones, Aurelio Gracia,
Gerardo Cruz, Thomas Rivera,
Juan Dalmau y Estado Libre
Asociado de Puerto Rico

    Recurridos


SENTENCIA

San Juan, Puerto Rico, a 29 de diciembre de 2006


Por los fundamentos expresados en la Opinión que antecede, la cual forma parte íntegra de esta Sentencia, se confirma la decisión emitida el 30 de junio de 2005 en el presente caso por el Tribunal de Apelaciones, en cuanto ésta validó la inscripción del Partido Independentista Puertorriqueño.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Juez Asociada señora Rodríguez Rodríguez concurrió en el resultado sin opinión escrita.


Dimarie Alicea Lozada
Secretaria del Tribunal Supremo Interina